THOMPSON, J.
 

 This case comes up on an agreed statement of facts, from which it appears that on March 15, 1926, the defendant addressed the plaintiff in writing as follows:
 

 “In consideration of a reasonable effort to be made by you to sell the property described on the reverse side of this card, to which I hold title in my own name, at prices and terms therein given, I hereby appoint you my exclusive agent, for a period of six months, and authorize you to accept a deposit on the purchase price.”
 

 “In the event of the sale of the property during the life of this contract, I agree to pay you a commission, based on the sale price of the property, at the rate of 5 per cent on the first $10,000.00 and 2% per cent on all over that amount.”
 

 “In the event I should sell the property after the expiration of this contract within a period of six months to anyone to whom you have previously offered it, I agree to pay to you the above stipulated commission.”
 

 The price at which the land was to be sold was $75,000.
 

 After the execution of the contract, the plaintiff put posters on the property showing that he had the property for sale. He also advertised the property in the local newspapers, and otherwise personally tried to in:
 
 *238
 
 terest people in buying the property. He did not, however, secure a purchaser at the price stated or at any price.
 

 On August 10, 1926, a little over a month before the expiration of the contract with plaintiff, the defendant sold the property to M. A. Stanton of Shreveport for $71,000 cash. It was agreed in a separate written instrument at the time of this sale that the purchaser Stanton would convey the property to any one named by his vendor for the price that O’Neal had been authorized to sell it for, the agreement to be effective during the life of the plaintiff’s contract.
 

 On the day following this sale, Stanton, at the request of his vendor, notified the plaintiff of his purchase and advised him that the Southland Lumber Company was still in a position to deliver the property under any contract of sale which he (O’Neal) may make under the terms and conditions of his contract with the said company.
 

 . Thereafter O’Neal made no further efforts to sell the property, and, after the expiration of his contract, filed this suit for commission on the sale made by the defendant.
 

 There is no charge made that the defendant acted in bad faith and with the purpose of depriving the plaintiff of his commissions, and it does not appear that the sale made by the defendant had anything to do with the failure of the plaintiff to sell the property at the stipulated price.
 

 The plaintiff bases his claim to the commissions on the sole ground that he was given the exclusive right and privilege of selling the property, and hence the commission was due him on a sale made by the owner during the life of the contract.
 

 We do not so understand the terms of the contract.
 

 The stipulation of the contract is that: “I hereby appoint you my exclusive agent for a period of six months, and authorize you to accept a deposit on the purchase price.”
 

 There is nothing in the contract which would convey the idea that the defendant was giving to the plaintiff the exclusive
 
 right
 
 to sell the property and surrendering its own right to do so. The meaning, and only meaning, that could be given to the procuration, is that the plaintiff was to be the exclusive agent or broker, and that the defendant would not appoint any other agent or broker during the life of the contract.
 

 There is a marked difference between the appointment of an
 
 exclusive agent
 
 to sell real estate and the granting of the
 
 exehtswe ■right
 
 to such agent to sell during a fixed period.
 

 This is recognized in 9 Corpus Juris, p. 622.
 

 “Where, however the broker is given merely an exclusive agency, as distinguished from an exclusive right to sell, it merely precludes the principal frqm employing another broker, and does not preclude him from making a sale himself without the broker’s aid, and in such a case he will not be liable to the broker for commissions.”
 

 The same rule is laid down in 4 R. C. L. p. 321:
 

 “The grant of merely an exclusive agency, however does not have the effect of preventing the owner from selling independently through his own personal efforts, as it siinply secures to the broker an exclusive agency; that is,' the cnrployer cannot sell through the mediuní of another broker without violating the terms of his agreement and rendering himself liable therefor.”
 

 The eases cited by the plaintiff are not pertinent to the question presented in the instant case. They would have some bearing had the defendant granted the plaintiff the exclusive right to sell its property.
 

 In Kostmayer v. Mrs. Grace Landry, 12 Orleans App. p. 385, the defendant had made plaintiff her agent for the sale of her property with the
 
 exclusive authority
 
 during 90 days to accept any offer to purchase the property
 
 *240
 
 at $18,000. The defendant further bound herself to refer to plaintiff all applicants for the property, and agreed to pay him as brokerage charges for making the sale 5 per cent, commission. The case is entirely different from the one under consideration.
 

 The same is true of Clesi v. D’Angelo, 5 La. App. 432.
 

 In that case the contract conferred upon the broker the
 
 exclusive right
 
 to sell the property.
 

 We have not access to the case of Viguerie v. Davis, 5 La. App. 77, another Court of Appeal case. If that ease is correctly quoted in plaintiff’s brief, and we assume that it is, then it is clearly out of line with all of the other cases cited by plaintiff.
 

 The case of Freeman & Freeman v. Torre Realty
 
 &
 
 Improvement Co., 157 La. 1094, 103 So. 334, simply holds that an owner of land may place it in the hands of as many brokers as he sees fit, as long as no exclusive agency is given; and, where several brokers are employed, the one who first produces a customer and is the procuring cause of the sale is entitled to the commission, to the exclusion of the other brokers.
 

 We fail to see any application whatever of the cited case to the instant one.
 

 Another case which has no application is Murphy v. Sawyer, 152 Ky. 645, 153 S. W. 991.
 

 In that case the owner had agreed With the broker not to sell the property except through him, thus giving the broker the exclusive right to sell the property.
 

 The case of Clesi v. Cooney, 164 La. 658, 114 So. 584, was before us on an exception of no cause of action, which was sustained by the lower court. We remanded the case, holding that the petition disclosed a cause of action.
 

 The contract in that case provided that, if the owner sold the property during the life of the contract, he would pay 3 per cent, commission on the purchase price — an entirely different contract from the case we are now considering.
 

 We held, however, in that case that:
 

 “Whether making 'of contract for sale of property by owner, during term of broker’s authorization to, sell, made owner liable for commission under contract providing for payment thereof, if property were sold by him during such term, held to depend on whether it took away from broker his authority to sell during term of his contract.”
 

 In the present case the sale of the property by the owner did not take away from the broker the right to sell the property during the period specified in the contract. On the contrary, the owner expressly reserved the right to comply with its contract with the broker by making a deed to the purchaser secured by the plaintiff.
 

 No buyer was procured by the plaintiff, and none was even suggested by him.
 

 It is no sufficient answer for the plaintiff to say that the written contract between defendant and Stanton, by which the latter agreed to^convey the property to a purchaser secured by the plaintiff, was not of record and' could not be enforced.- If the plaintiff had made a sale, and the defendant and Stanton had failed to make good their agreement, then plaintiff might have had a cause of action for his commission.
 

 The plaintiff’s demand was rejected, and we think properly so.
 

 Judgment affirmed: