No. 649

First Circuit

NICKERSON & VENNARD v. BUTCHER

(June 30, 1930.  Opinion and Decree.)

Mouton & Debaillon, of Lafayette, attorneys for plaintiffs, appellees.

Debaillon & Meaux, of Lafayette, attorneys for defendant, appellant.

ELLIOTT, J.  Nickerson & Vennard, a firm composed of John C. Nickerson and Wickliffe B. Vennard, brought suit against Louis Butcher for $425 with interest, claiming said amount as commission on a sale of real estate which the said defendant had made through Mike Donlon, another real estate agent, after having previously listed his property with them.

Defendant listed his property for sale with the plaintiffs by written contract in July, 1925, and the contract expired December 1, 1925.  The price at which the property might be sold by plaintiffs was fixed at $10,000; terms, one-third cash and the balance in 1 and 2 years, the plaintiffs to receive, as their compensation for selling it, 5 per cent on the amount for which it was sold.

No sale was effected under the contract mentioned, but having been renewed, it fixes the price at which plaintiffs were authorized to sell, and the commission to which they were entitled under the extension, which will be presently stated.

On January 1, 1927, defendant listed his property for sale with Mike Donlon, by contract to endure for six months.

On February 15, 1927, defendant renewed his above-stated contract with the plaintiffs by an agreement in the following words written over the top of the former contract:

"This listing is hereby extended to May 15th, 1927."

On February 25, 1927, the property was contracted to be sold through Mike Donlon for the price and sum of $8,500, of

which amount the sum of $3,500 was deposited with Mr. Butcher to be applied as part of the price and was at the same time to stand as earnest money. The final act of sale was to be passed on January 14, 1928.

The defendant contends that his signature to said renewal contract with the plaintiffs was obtained by fraudulent misrepresentations on the part of Mr. Vennard, of the plaintiff firm, and that it is therefore not binding on him. He also contends that he is not liable to the plaintiffs for any commission, because they did not effect a sale under the renewed contract. He further contends that the promise of sale which he executed through Donlon on February 25, 1927, and carried out January 14, 1928, did not interfere with plaintiffs in carrying out the agreement entered into with them, and that he is not liable to them for any commission on that account.

The promise of sale which defendant entered into with Henry Bendel was carried out on January 14, 1928, by the payment of $5,000, the balance of the price, and the execution of a formal act of sale; the act in terms referring back to and being based on said promise of February 25, 1927.

The defendant wrote plaintiffs through Mike Donlon the next day following the execution of said promise, notifying him that he had sold his property, etc.

And the next day after getting this notice, Messrs. Nickerson and Vennard called on Mr. Butcher at his residence, complained to him of the course he had pursued in listing his property with and selling it through Mr. Donlon after having listed it with them, and requested payment of 5 per cent on the price of sale as stipulated in the renewal contract with them.

Defendant made reply to plaintiffs' complaint and request for payment, as follows:

"Q. When did Mr. Vennard and Mr. Nickerson call at your house with reference to the commission which they claimed was due them by you?

"A. The next morning Mr. Vennard and Mr. Nickerson came home and I was at the house and I met them and they told me they had come for a settlement of their commission. I told them I made a promise of sale, but Mr. Donlon had made the deal. And after they called for the commission I told them I would see them later in the day or tomorrow, because I wanted to look after my papers, if I owed them or not. I told them if I owed them anything I would pay them, because I never refused to pay what I owed legally. And they offered to settle on one-half commission to make a settlement right away. I told them if I owed them a commission I would pay them all, but I did not think I owed them anything."

This occurred on the second day after the promise of sale had been executed, and the twelfth day after the signing of the renewal contract. If defendant's signature had been obtained by the fraudulent misrepresentations of Mr. Vennard so recently made, Mr. Butcher would have felt a natural impulse to complain to them on the subject there and then. But taking his own language, he did not charge Mr. Vennard with the fraud alleged in his answer, but told them that he would see them later in the day or tomorrow, because he wanted to look after his papers to see if he owed them or not.

Defendant testifies that when Mr. Vennard called on him and requested a renewal of their former listing, he informed Mr. Vennard that he could not sign a renewal because he had listed his property with Mr. Donlon and did not wish to pay two commissions, and that Mr. Vennard induced him to sign the renewal, by making him

the promise that if his firm effected a sale, his firm would expect only a half commission, and that through Mr. Donlon. That he signed, relying on this promise made him by Mr. Vennard.

Mr. Vennard, as a witness, denies that defendant told him on the occasion in question that he had listed his property with Mr. Donlon; that he did not wish to pay two commissions; and that he (Vennard) promised him that if he would sign the renewal and his firm effected a sale, they would expect only a half commission, and that through Mr. Donlon. Defendant's failure, at the time Messrs. Nickerson and Vennard called on him, to complain of anything promised him in obtaining his signature to the renewal contract, is a circumstance which tends to support the denial of Mr. Vennard.

The burden of proof is upon the defendant to establish the fraud which he charges. Defendant produced a witness whom he contends corroborates him as to what Vennard promised him as a consideration for signing the extension, but the witness testified that he heard defendant say to Vennard that he could not sign it, and that is about all that the witness could remember hearing.

The fact is, defendant did sign the extension, and this written extension is supposed to recite the true agreement between the parties. The renewal refers to the original agreement; it contains nothing to the effect that the plaintiffs were informed that the property had been listed with Donlon and that if they effected a sale they would divide their commission with Mr. Donlon, so that defendant would not have to pay two commissions.

Vennard, as a witness, says that he wrote the extension, presented it to the defendant asking him to sign it, and that defendant signed it and he left.

As held in Calhoun vs. McKnight, 44 La. Ann. 575, 10 So. 783, and in many other similar cases, a charge of fraud is to be looked into closely for facts and circumstances which on their face appear to be all right, but which in fact operate as a fraud upon the complaining party. In this case the facts and circumstances do not indicate that defendant's signature to this extension was procured by fraud.

In Conley vs. Nailor et al., 118 U. S. 127, 6 S. Ct. 1001, 30 L. Ed. 112, the court had occasion to consider a deed, the execution of which it was charged had been procured by fraud, and the court said:

"In order to cause a will or deed to be set aside on the ground of fraud and undue influence, it must be established to the satisfaction of the court that the party making it had no free will, but stood in vinculis."

We therefore find that the weight of the evidence does not show the fraud of which the defendant complains.

As for defendant's contention that plaintiffs did not effect a sale, the plaintiffs testify that they were trying to sell the property, but when they learned that defendant had executed the promise of sale in favor of Mr. Bendel on the terms mentioned, they looked on it as useless to make any further effort on their part. The price was $1,500 less than they were authorized to sell for, and the amount of earnest money which had been deposited with the defendant showed that the defendant was bound to carry out the contract.

The evidence shows that defendant well understood the meaning of the stipulation on the subject of earnest money, and that if he refused to carry out the promise he

would not only forfeit the $3,500 received, but would have to pay over to Bendel $3,500 in addition. Therefore if plaintiffs be supposed to have effected a sale for $10,000, they would have been entitled to $500 commission. This $500 added to the $3,500 which defendant would have been compelled to pay over to Bendel would have amounted to $4,000, which, taken from the $10,000, would have left for Butcher only $6,000. Therefore Butcher would save money by carrying out his promise to sell to Mr. Bendel for $8,500.

Confronted with these facts, plaintiffs were justified in going no further, and in taking it for granted that defendant would carry out his contract, and that if they were entitled to any commission under their renewal contract, they might as well put forward their claim, as they proceeded to do.

Defendant further contends that his promise of sale made on February 25, 1927, to be carried out on January 14, 1928, did not interfere with the plaintiffs nor prevent them selling the property.

This brings back for consideration the amount of earnest money which defendant had received, concerning which we have already expressed an opinion. It is useless to repeat what we have said on that subject.

The defendant cited us the case of Clesi vs. Cooney, 164 La. 657, 114 So. 584, and O'Neal vs. Southland Lumber Co., 168 La. 235, 121 So. 755, as authorities for holding that his promise of sale to Bendel did not justify the plaintiffs in claiming their commission. But we find that the situations in the cases cited are not comparable to the one we have in hand, therefore should not control the right of the plaintiffs in the case.

The lower court decided the case in favor of the plaintiffs, giving judgment in their favor as prayed for.

The judgment is correct. Judgment affirmed.

Defendant and appellant to pay the cost in both courts.