44 So.2d 134 (1950)
DONLON
v.
BABIN.
No. 3184.
Court of Appeal of Louisiana, First Circuit.
January 31, 1950.
Nicholls Pugh, Jr., Lafayette, for appellant.
Dugas & Bean, Lafayette, for appellee.
ELLIS, Judge.
This is a suit by a real estate agent for a commission alleged to be due him as the *135 result of the sale of property by the defendant.
From a judgment in favor of the defendant the plaintiff has appealed.
It is shown that the defendant, Haywood Babin, together with his two sisters, Hazel and Louisiana Babin, owned in indivision (an undivided one-third interest to each) a lot of ground with improvements in the City of Lafayette and, being desirous of selling the property, the defendant, individually and as the admitted agent of his two sisters and co-owners, on February 9th, 1948 went to the plaintiff, who was a licensed real estate broker who had been doing business in the City of Layfayette for thirty years, which resulted in the employment of the plaintiff by a written contract which is known as "exclusive listing." The contract, among other stipulations, contained the following:
"I/we employ you or your successors, exclusively, with the sold exclusive right, to sell the same for $4200.00 cash * * * or for any other price, or terms as may hereafter be agreed upon and I/we agree to pay you or your successors a commission of 5% on the gross amount of any deal (agreement to sell or exchange) bearing on said property (minimum commission of $25.00) that may be negotiated during the existence of this contract * * *. In case of employment of counsel to enforce this contract, I/we will pay all costs and attorney's fees."
"I/we agree to refer all applicants to you and not to interfere in the sale of the property during the term of this contract."
"* * * As you are to act upon the faith of this employment and contract, it is to remain in full force and effect for a period of six months from date."
The above contract was signed by Haywood Babin, individually, and the names of his two sisters and co-owners, Hazel Babin and Louisiana Babin, appear on the contract above the signature of "Haywood Babin, Agent," which authority was admitted.
On July 19th, 1948, prior to the expiration date of the contract which would have been August 9th, 1948, the defendant, together with his co-owners, Hazel and Louisiana Babin, sold the property by warranty deed to the Home Building and Loan Association for a consideration of $3,000.00. On the same day, July 19, 1948, the Home Building and Loan Association sold or retransferred the property to the previous co-owner, Hazel Babin, also for a consideration of $3,000.00, represented by a mortgage note in that amount with the usual vendor's lien and privilege retained by the homestead association.
It is shown that prior to this sale, the defendant attempted to contract the plaintiff with regard to the homestead transaction but was unable to do so, and as the defendant was in need of money, he and his sisters agreed that they would negotiate the homestead transaction whereby all three would sell the property to the homestead for $3,000.00 and the homestead would retransfer the property to Hazel Babin, and with the money received from the homestead for which it retained a mortgage, Hazel Babin paid to the defendant $1,000.00 for his undivided one-third interest, and the same amount of money to Louisiana Babin for her like interest.
There is testimony to the effect that should Hazel Babin subsequently sell the property for more than $3,000.00 she agreed to divide all over that amount equally with her brother and sister. However, she had never sold the property to the date of the trial and had, as a matter of fact, made improvements with all or a portion of the $1,000.00 which she received from the Homestead Association.
It is not disputed that the defendant understood the contract and that the plaintiff had fulfilled his part of the contract insofar as attempting to sell or exchange the property but had not produced a purchaser before the sale to the homestead by the defendant and his two sisters and co-owners and the transfer or resale by the homestead to Hazel Babin.
It is the contention of the plaintiff that the sale of the property during the life of and under the terms of the contract constituted a breach thereof, which entitled him to his commission and attorney's fees, *136 which counsel requests be fixed at $75.00, and all costs of court.
Counsel for defendant, in his brief, contends that there are two questions before this Court for determination, viz.:
"I. Was the transaction entered into between Haywood Babin, defendant herein, and his two sisters a `deal' such as was contemplated by the parties at the time of the listing, and is said `contract of listing' enforceable by the courts?"
"II. Assuming the Court finds that there is liability on the part of defendant, what is the amount of liabilityis there liability in solido as to defendant."
In answer to the first question, counsel argues that the word "deal" in the listing contract is defined in Winston's Dictionary, College Ed. Copyright 1940, and Roget's Thesaurus as having a variety of meanings which would include agreements to purchase, agreements to sell, contracts of listing, acts of mortgage, donations, pledges, money collected and "what have you." Counsel for defendant follows this in his brief with a statement as follows: "Could it be seriously contended that plaintiff would be entitled to his 5% commission on the total amount if the defendant and his sisters would have mortgaged the property for the sum of $5,000.00? Actually, that is what Haywood Babin and his sisters did and intended to do at the time the arrangement between them was made. Is the provision of the Donlon listing contract such that to enforce it would lead to absurd consequences?"
In answer to the above, the contract itself is clear as to the meaning intended in the contract by the word "deal", for immediately thereafter in parenthesis is "agreement to sell or exchange" which refers to and defines this word and, therefore, it clearly would not cover an act of mortgage. There was no intention on the part of the defendant or his sister, Louisiana Babin, to mortgage their interest in the property, else they would have actually done so, or, along with their co-owner, Hazel Babin, would have repurchased or caused to be re-transferred to them the property in question. They did not do this but sold their interest to the homestead for a valid consideration which each received. It might be said that the transactions were, in effect, a sale to their sister and co-owner Hazel Babin. Under any interpretation, the defendant and Louisiana Babin sold their interest. The purchase of property by Building and Loan Associations and a resale of the property at the same time is a sale of said property with the vendor's right and privilege. See Holloman v. Alexandria & Pineville Building & Loan Association, 137 La. 970, 69 So. 764, and Capillon v. Chambliss, 211 La. 1, 29 So.2d 171.
It is the contention of the defendant that the transfer to the association was not such a sale as would render him liable for the commission and that to hold to the contrary would lead to an "absurd consequence," in violation of Article 1945 of the Civil Code as the defendant did not intend to bind himself and his co-owners to do nothing with the property insofar as exchanging or selling to each other was concerned. Counsel for defendant adopts the reasoning of the Trial Judge on this point to the effect that "clearly they did not need a broker to sell to each other. While the transfers were sales, the association was interposed to obtain money with which to pay the co-owners for their interest. To hold otherwise would lead to an `absurd consequence', and were we to write this intent into the contract it would be contrary to public policy and give the broker a distinct and undue advantage. It cannot reasonably be said that a co-owner is `another party.'" Counsel cites in support of this reasoning Boisseau v. Vallon & Jordano, 174 La. 492, 141 So. 38, 40.
Such an argument might well be made on behalf of Hazel Babin, however, we are not called upon to pass upon this question at this time as neither she nor her sister, Louisiana Babin, were made parties defendant.
The contract in question included any person capable of purchasing the property or the interest of any one or more of the co-owners in accordance with the terms of the contract. Of course, if the defendant and his sisters had known that the co-owner wanted to or would purchase the property *137 prior to the time they signed the contract, they would not have entered into it, but the same argument can be made with regard to any other third person. There is nothing in the contract that would have prohibited plaintiff from effecting the sale to Hazel Babin and earning the commission from the two co-owners.
The present case is easily distinguished from the cases cited by counsel for defendant and particularly the Boisseau v. Vallon & Jordano, supra, for in that case the contract stipulated at the time of the agreement to exchange that the real estate commissions were to be paid even though the exchange was not consummated. The Court stated: "The words of this instrument are `clear and explicit' that he was to pay these commissions, even though the motive and purpose which prompted him to sign it would not possibly be attained. But we cannot give effect to these provisions when to do so would lead to an `absurd consequence.'"
In the present case there was actually a sale made.
There is no doubt that a contract of employment conferring upon a real estate broker the exclusive right to sell the property during a specified period of time entitles the broker to a commission on any sale of the property made during that time whether the sale be made by the owner personally or through another broker. Viguerie v. Davis, 5 La.App. 77; Veters v. Sweeney, 5 La.App. 548; Fowler v. Phillips, 159 La. 668, 106 So. 26; Clesi v. Cooney, 7 La.App. 182; Harvey v. Sehrt, 12 La.App. 583, 126 So. 568; Kaufman Agency v. Viccellio, La.App., 174 So. 709; Zollinger v. Gust, La.App., 192 So. 132; Sollie v. Peoples Bank & Trust Co., La. App., 194 So. 116; Doll v. Thornhill, La. App., 6 So.2d 793; Nickerson & Vennard v. Butcher, 14 La.App. 20, 129 So. 240.
The Orleans Court of Appeal, in the case of Doll v. Thornhill, 6 So.2d 793, 795, considered a listing contract identical in all material respects with the contract now under consideration. In that contract, as well as the one being considered, there was a provision whereby the owner agreed to refer all applicants to the broker and not to interfere in the sale of the property during the term of the contract. Referring to the quoted stipulation the Court stated:
"But above and beyond all of these facts we find that Thornhill clearly violated the plain provisions of his contract in not referring Bankston to Doll as soon as the former evidenced any interest in the property. It will not do for him to say that had he done so, no sale would have resulted. A real estate agent is supposedly an expert in his business, and we must presume that he could have accomplished what Thornhill accomplished, or that he could have persuaded one of the parties to recede sufficiently from his position for the consummation of a trade. At any rate, he was entitled to the opportunity to try. To uphold the contention made here by Thornhill would establish a dangerous rule and would open the door in many cases to the perpetration of fraud upon agents who conscientiously try to carry out their mandates.

* * * * * *
"But all of these questions need not be gone into. A real estate agent, who has an exclusive contract and who under it has done what he could to sell the property, need not show that it was actually through his efforts that a purchaser was produced.

* * * * * *
"Nor can that stipulation be looked upon as unimportant or as one which the owner might overlook, for immediately after the signing of the contract, his attention was called to it in a letter in which the agent thanked him for employing him and said to him that his attention was called to the fact that all applicants should be referred to the agent. For these reasons when Thornhill dealt directly with Bankston, and did not refer him to the plaintiff, he breached the contract, and later when he directly made the sale to Bankston, he made himself liable to Doll for the stipulated commission. Since legal services have been necessary to vindicate the rights of Doll, he is also liable for the attorney's fees provided for in the contract."
*138 We are, therefore, of the opinion that plaintiff is entitled to a commission from the defendant, however, it must be decided as to whether the defendant is liable for the entire commission or only his proportionate share.
It is contended by plaintiff that in view of the provision of the contract that "I/we agree to pay you a commission * * *" binds the defendant in solido. Counsel cites Article 2091 of the Civil Code and a number of authorities, however, the provision of the contract referred to was a form used in the event that there was one owner or more and should there be more than one, the "I" is surplusage. The authorities cited are not applicable to the present case and particularly in view of the holding in the case of Whatley v. McMillan, 152 La. 978, 94 So. 905, 906, wherein the Court said: "But we do not think that C. V. McMillan (co-owner who represented himself to be agent for other co-owners), as co-owner, can be held in solido, or for the entire amount called for by the agreement, but only in proportion to his interest in the property. If the agreement had been ratified by the co-owners, and the sale had been consummated, the several co-owners would have had to account to plaintiff only each in proportion to his interest in the land. The situation is analogous with that of joint vendors whose liability in warranty is in the proportion of their ownership. Suthon v. Laws, 127 La. 531, 53 So. 852, Suthon v. Viguerie, 127 La. 538, 53 So. 855. If it were otherwise, a joint owner to an infinitesimal extent in real estate might be held in warranty for the entire price which he and his co-owners had received from the sale of the property, or, in a case like the present, for the entire commission of the real estate agent; and this even though the title to his own small interest was good, or, in the case like the present, even though he himself had been willing to carry out the agreement for the sale."
We, therefore, conclude that if the plaintiff had endeavored to perform his part of the contract and as the sale by the defendant of his interest in the property was made during the life of the contract and prior to its expiration and the defendant clearly understood the provisions of the contract requiring him to refer all prospective purchasers to the plaintiff, which he failed to do, he is liable under the provisions of the contract for his share of the agent's commission, which is one-third of the total commission of $150.00 or $50.00.
Counsel for defendant contends that plaintiff neither alleged nor attempted to prove that he was entitled to attorney's fees. The petition contains the entire contract of listing which provided that: "* * * In case of employment of counsel to enforce this contract, I/we will pay all cost and attorney's fees," and plaintiff prayed for "attorney's fees in the sum of $75.00 and for costs of this suit and for all general and equitable relief, etc."
We are of the opinion that plaintiff's petition and prayer is amply sufficient so as to entitle him to a decision on the question of attorney's fees. In the case of Williams v. Ralph R. Miller Shows, La. App., 17 So.2d 67, 68, a similar question arose, and the Court in allowing the attorney's fees, stated: "On the question of attorneys fees, it has frequently been held that proof of the value for the services rendered need not be made as these services being performed in the presence of and under the eyes of the court itself, the court can, on its own initiative fix such value, it would seem that their recovery follows as a legal consequence of the dissolution of the writ."
Also see Alexander v. Home Insurance Company of N. Y., La.App., 142 So. 708, and Knowles v. Dixie Fire Insurance Company of Greensboro, North Carolina, 177 La. 941, 149 So. 528.
As plaintiff prayed for $75.00 attorney's fees, and the defendant's liability being one-third, we will allow attorney's fees in the sum of $25.00.
It is, therefore, ordered that the judgment of the District Court be reversed and that there be judgment in favor of the plaintiff and against the defendant in the full sum of $50.00 and in the further sum of $25.00 as attorney's fees and all costs.
*139 ROBERT D. JONES, J., sitting ad hoc.
DORÉ, Judge, (dissenting).
As I view this case, the material facts in this case are as follows:
During the existence of the contract of listing, Haywood Babin and Louisiana Babin needed money with which to pay some pressing existing debt. In order to borrow money from the Home Building and Loan Association, it was agreed between the co-owners of the property that the title of the property be placed in the name of Hazel Babin, one of the co-owners, and in order to effectuate this, the said Haywood and Louisiana Babin, by deed on July 19, 1948, transferred their said interest to Hazel Babin, for a stipulated consideration of $1000.00. Thereafter, Hazel Babin transferred the property to the Home Building & Loan Association for the stipulated sum of $3,000.00, and in turn, the Building & Loan Association retransferred the property to the said Hazel Babin for the said amount, reserving a vendor's lien and privilege and a mortgage on the property, Haywood and Louisiana Babin each receiving $1000.00 from the said amount so borrowed, and Hazel Babin allowing the said Building & Loan Association to retain her $1000.00 for her future use. At the time these transactions were made, it was agreed between the co-owners that the property was to remain listed with the plaintiff, and that in the event of sale for more than $3000.00, the amount of the mortgage, then the surplus was to be divided equally between the co-owners. Such agreement and understanding was sought to be imparted to plaintiff, but it could not be done for the principal reason that plaintiff could not be found.
The question which arises is the effect to be given these acts of transfer. Are they really sales in contemplation of the contract of listing? I believe not.
The pertinent statute, Act 140 of 1932, Section 50, as amended by Act 9 of 1946, Section 4, Dart's Statute, Section 744.19, states: "(a) Every loan on real property shall be secured, except as otherwise hereinafter provided, by vendor's lien and privilege and first mortgage upon real property situated in the parish where such association is domiciled, * * *." And after providing for the rank of such vendor's lien and privilege, further provides: "It shall be lawful for such association to purchase from any shareholder or other person any real estate, improved or unimproved, and to sell or dispose of the same in the same condition or after improving, repairing or building upon the same, to any member, provided that such association may make sales of property, real and personal, either for cash or on terms of credit, that such association shall have power to loan and advance money to its members for the purpose of enabling its members to purchase, improve, repair and build upon real estate and to remove encumbrances and mortgages therefrom and for any other purpose, and to make all contracts and do all acts necessary and proper in connection therewith, and that in case of any such association in aid or for the accomplishment of any of the aforesaid powers shall purchase or secure property from any person, and shall afterward sell or dispose of the same property to a member, then such association shall have a privilege of equal rank as the vendor's lien and privilege upon the property so acquired, sold and disposed of for the security of the payment of such money due by such member; that such associations are authorized and empowered to contract and agree, with any person, to acquire or purchase from any such person any property and afterward to sell or dispose of the same property to a member even though said agreement be made at one and the same time, and such contract and agreement shall not be considered or dealt with as a loan, but as a purchase or acquisition by the association, and then as a sale by the association, to such member, and such association to secure payment of the amount due by such member, shall have a lien of equal rank with a vendor of real estate and shall enjoy for the protection of its claim and the enforcement of its loan all the rights, privileges and securities which are now accorded *140 by law to the vendor of the property."
Thus the statute in express terms authorizes a building and loan association to contract for the sale and resale of property, and specifically declares that such a transaction "shall not be considered or dealt with as a loan," but as a sale and resale to secure the amount lent to the borrowing member under a vendor's lien and privilege on the property involved in the transaction.
Hence the sale and resale to and from a building and loan association quoad the parties to the transaction, or to parties claiming under them, must be considered and dealt with as a sale and not as a loan, so as to preserve a vendor's lien and privilege on the property conveyed and reconveyed. However, quoad other parties, or parties not claiming thereunder, I am of the opinion that it was not the intention of the Legislature, in conferring upon building and loan associations this valuable right to effect a change in the transaction or the status of the property. Under our jurisprudence, a sale and resale between parties, other than a building and loan association, is in legal effect a conventional mortgage and does not give rise to the vendor's privilege; thus we see why the Legislature saw fit to grant building and loan associations this valuable right. I again reiterate that as between plaintiff and defendant these transactions amounted to a conventional mortgage and in truth and in fact, not a sale.
Since these transactions cannot or should not be considered, in so far as this case is concerned, in any other light but a mortgage, the question arises as to whether plaintiff is entitled to a commission on the amount borrowed. In order to answer this question in the affirmative, we would have to hold that the granting of this mortgage was a "deal" contemplated by the parties. I am of the opinion that we cannot do so for the reasons stated by the trial judge, in that, to do so, would lead to absurd consequences. I am in full accord with the expression of Justice McCaleb in the case of Bondio v. Joseph Binder, Inc., found in La.App., 24 So.2d 398, at page 401(4, 5), wherein he states: "In interpreting the contract, it is, of course, of primary importance to discover whether its provisions are clearly set forth and that they express the true intention of the parties. And, even if the words used are fairly explicit, it is our duty to refrain from construing them in such a manner as to lead to absurd consequences. See Article 1945 of the Civil Code."
I respectfully dissent.