131 So.2d 567 (1961)
McKINNEY REALTY COMPANY, an Ordinary Partnership Composed of Joseph William McKinney and Adam Thomas Weidert,
v.
Miss Louise KABEL and Ernest J. Kabel.
No. 13.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1961.
Polack, Rosenberg & Gex, Robert G. Polack, New Orleans, for plaintiffs-appellants.
Leo L. Dubourg, New Orleans, for defendants-appellees.
Before REGAN, YARRUT and SAMUEL, JJ.
SAMUEL, Judge.
Defendants were the owners of an unimproved tract of land in the City of New Orleans and plaintiff, McKinney Realty Company, was a partnership holding real estate broker licenses, said partners being also engaged in other businesses under the names of McKinney Construction Co. and McKinney Mortgage & Investment Co. Defendants were desirous of developing the tract into a subdivision and had made some progress in this direction, to the extent that they had obtained preliminary and tentative approval thereof by the City, when they entered into a contract with plaintiff, drawn by the latter, under which the owners appointed plaintiff as their "exclusive selling agent" with authority to procure purchasers for any and all lots in the subdivision, the owners to pay all costs incident *568 to the development of the property, such as grading, surveying, installation of streets, water and gas, etc., the company to employ agents and do all the work necessary in preparing for the sale of the lots and to bear the cost of advertisement. For its services rendered under the contract the company was to receive a commission of 10% of the gross sales price of the lots sold by it.
Alleging that defendants have prevented it from carrying out the contract, plaintiff instituted this suit for damages in the amount of $17,000.00, representing its commissions on all lots remaining unsold, and, alternatively, for $9,214.68, allegedly the amount of expenses incurred by it for the account of the defendants. Plaintiff has appealed from a judgment in favor of defendants which dismissed the suit.
A real estate broker who has only an exclusive agency to sell is not entitled to a commission on sales made by the owner himself. He is entitled to a commission only on sales made by himself to purchasers produced by or through himself. Such a contract does not give the broker the exclusive right to sell the property; it simply precludes the owner from appointing any other agent during the life of the contract. O'Neal v. Southland Lumber Co., 168 La. 235, 121 So. 755. The jurisprudence clearly distinguishes the appointment as exclusive agent from the contract of employment conferring upon a real estate broker the exclusive right to sell, which latter entitles the broker to commissions on all sales during the life of the contract including those made by the owner. O'Neal v. Southland Lumber Co., supra; Donlon v. Babin, La.App., 44 So.2d 134.
Plaintiff relies upon that rule of law to the effect that a party who prevents the performance of a contract cannot take advantage of its non-performance by the other party. The other party is considered as having performed. See Sporl v. New York Indemnity Co., 176 La. 363, 145 So. 771; Shepard v. Hero, 11 Orleans App. 340; Steppach v. S. E. Worms & Co., 7 Orleans App. 214.
The petition alleges that defendants have prevented plaintiff from performing under the contract in the following manner:
(1) That after Ernest Kabel, a defendant, resigned as salesman for plaintiff he took with him, and failed to return the key to a small field office which plaintiff had erected on one of the lots in the subdivision and also took, and failed to return, a map upon which the agreed prices of the various lots had been written without which key and map plaintiff was unable to use its office or make sales;
(2) That Kabel would quote to prospective purchasers, who had been referred to him, prices in excess of those agreed upon among the litigants, with the result that such prospective purchasers would lose interest; and
(3) That in furtherance of defendant's attempt to violate the contract and to discourage the sale of lots in the subdivision by plaintiff, the defendants filed a mandamus suit in the district court seeking to have cancelled and erased the inscription of the contract between the litigants, which contract plaintiff had registered in the conveyance office.
The case was bitterly contested in the trial court and the lengthy record contains many direct contradictions of the testimony of each side by the other. Two of the few things agreed upon by all litigants were the fact that Ernest Kabel, one of the defendants, was employed by plaintiff as a salesman at a commission of 2½% to be paid out of plaintiff's 10%, a position from which he resigned after a few months, and the fact that no sales have been made in the subdivision except such as were made by Ernest Kabel, either in his capacity as salesman for the plaintiff, on all of which the latter has received its commissions, or in his capacity as owner. Therefore, *569 in the instant case, if plaintiff's present position is of no avail, plaintiff is entitled to commissions only on sales made by the partnership.
Frequent objections were made on behalf of the defendants in an attempt to prevent an enlargement of the pleadings, which objections the trial court allowed to go to the effect as continuing objections without the necessity of repetition, with the understanding that in no event would an extension or broadening of the pleadings be permitted. Therefore, in determining as a fact whether or not the defendants prevented plaintiff from carrying out its contractual obligations we can consider only the evidence offered in connection with the three reasons alleged in the petition and set forth above.
There is a conflict in testimony relative to the key to the field office. It is plaintiff's testimony that Ernest Kabel held the key and refused to return the same even after demand. On the other hand, it is Kabel's testimony that there was no such key nor was there any lock on the door, that the door remained open or unlocked at all times. Regardless of which side may be correct on this issue, we consider it of no importance. The small field office belonged to the plaintiff who, among other things, was in the construction business, and who could have gained entry with a minimum of trouble simply by removing the lock, or forcing the same in some other way, if such a lock did exist. The presence of a lock and the absence of a key therefor could not have prevented the plaintiff from performing its contract.
We are not impressed by the complaint about the map allegedly containing the agreed prices of the various lots. At the trial plaintiff did produce a map with prices written on the various lots. The testimony of McKinney, one of the partners of plaintiff, was that the partnership had had this map in its possession with the prices written on it at all times. He testified that the reason that they could not use the prices listed on the map was due to the fact that Kabel was quoting higher prices and plaintiffs could not know what prices were being quoted on what lots. It is obvious therefore that the map taken and not returned by Kabel, if such be a fact, was of no importance, and that the validity of this complaint, if any, must be determined under the second reason alleged.
Neither are we impressed by the second reason. The only testimony in the record to the effect that the parties did agree on set prices for the lots is that of McKinney and this is denied by Ernest Kabel, who testified that no prices were ever set and that the lots were sold at a figure he thought proper at the time each sale was made. It is worthy of note that the prices written on the various lots on the map produced by plaintiff at the trial do not correspond with the prices charged for the lots actually sold, all sale prices being considerably higher than the prices contained on the map. There is no evidence to the effect that any complaint was ever made by plaintiff about this situation over that considerable period of time during which the sales were made, and it did collect its 10% commission on the higher sale prices. And in its letter making demand for the return of the keys, a letter written on behalf of plaintiff by its attorney, demand is also made for "* * * an up-to-date office map showing the latest price of the lots * * * ", which certainly seems to contradict plaintiff's position. In addition, plaintiff was unable to produce even one prospective purchaser to whom Kabel had quoted higher prices than allegedly agreed upon or who had been discouraged from purchasing by such a quotation, nor was plaintiff able to name any such person. Plaintiff admitted that it had never obtained a written offer at a price shown on the map which offer Kabel had refused. We are unable to find as a fact that any set prices were ever agreed upon as contended by plaintiff. There is no substance to plaintiff's second complaint.
*570 Plaintiff's third complaint is clearly without merit. Defendants did file a mandamus suit for the purpose of removing from the conveyance records the inscription of the contract and they were successful in that suit both in the district court and here. See State ex rel. Louise v. Register of Conveyances, La.App., 94 So.2d 105. As was decided in that case plaintiff had improperly caused the inscription to be made. Defendants had the right to institute and prosecute their suit and the resulting erasure did not prevent plaintiff from carrying out its obligations under the contract.
In its alternative demand plaintiff seeks the sum of $9,241.68, being the amount of expenses claimed to have been incurred by plaintiff for the account of defendants for which the former is allegedly entitled to reimbursement. This sum is made up of items allocated to advertising, utilities, sales office and lettering thereon, furniture, sales commissions paid to others, labor and appraisal fees.
The largest item, the sum of $6,068.29, is advertising, an item and cost payable by the plaintiff under the specific terms of the contract. The item under utilities, $465.25, consists of installation and monthly service charges for electricity and a telephone placed in the small sales office erected by plaintiff on the property for the purpose of selling lots. This too is clearly an item to be borne by plaintiff as part of their cost of selling. The sales office belongs in the same category. It was erected by plaintiff for the purpose of furthering its sales of the property and this of course is also true of the painting and lettering on that office and the furniture therein, these being all of the lettering and furniture listed above. The furniture appears to be of small value and there is nothing in the record to indicate that it is not still in the sales office. The sales commissions claimed are those paid to the defendant Ernest Kabel while he acted as one of plaintiff's salesmen under a specific agreement whereby he was to receive such commissions. Plaintiff had contracted to pay these amounts, a total of $1,795.00, and cannot get them back after having paid the same under the agreement. The labor and appraisal fees, in a total of $267.14, is not as clear as the other items but on the showing made we conclude that they were also expense items to be borne by plaintiff under the contract. Plaintiff has received $6,670.00 as its 10% commission on sales made by it and this is the full amount to which it is entitled. The alternative demand is denied.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.