BARNETTE, Judge.
Defendant has appealed from a judgment in favor of plaintiff in the sum of $1,200 plus attorney’s fees of 25 percent.
The defendant SamueJ.Katz desired to sell two particular lots which he owned on Carrollton Avenue in the City of New Orleans. The plaintiff Charles J. Trapani, doing business as Trapani Realty Company, a licensed real estate broker, alleged that Mr. Katz engaged his services to procure a purchaser for one or both of these lots. Annexed to plaintiff’s petition, and filed in evidence on trial below, is a standard real estate listing agreement purporting to list the two lots in question with plaintiff for sale at $37,500 for both or $18,750 for one. It provides a broker’s commission of 6 percent. The agreement stipulates that it is an exclusive listing for a term of six months with exclusive authority to post signs on the lots. It also contains the following: “In case of employment of counsel to enforce this contract, I will pay 25 percent additional as attorney’s fees, also all costs.” It is dated May 23, 1965, and signed “Samuel Katz.”
The defendant admits signing the listing agreement, but testified that it was signed in blank. He testified that he and the plaintiff Trapani were contemplating a joint venture in real estate transactions, and that the listing agreement was signed by him in blank to be used as authority for Trapani to show certain property on St. Bernard Avenue. Mr. Katz emphatically denied that the description of the Carrollton Avenue lots was on the agreement when he signed it. Mr. Trapani is equally emphatic that Katz gave him the descriptive information and that he, Trapani, wrote it into the agreement at the time the agreement was made and signed by Mr. Katz. Neither plaintiff nor defendant was a good witness ; both rambled about at some length on irrelevant matters and each one appeared unwilling or unable to give direct answers to specific questions in certain respects.
Whether or not the agreement was signed in blank and later filled in by Mr. Trapani is relatively unimportant. Mr. Katz admits signing it and testified that he personally assisted Mr. Trapani in posting Trapani’s signs on the property. There *425 fore, there is no' question that Trapani was authorized as real estate broker to offer the lots for sale.
Thereafter, on May 24, 1965, an offer was obtained by Gertrude Gardner, Inc., another real estate firm, from Carrollton Avenue Methodist Church to purchase one of the lots for $17,500. This offer was submitted by Gertrude Gardner, Inc., to Trapani. A formal offer was prepared and signed by Carrollton Methodist Church, by Charles E. McHale, attorney and trustee. The name of the church is clearly stated in the offer. At the bottom of the printed form is typed: “Commission to be divided equally between offices of Trapani Realty Co. and Gertrude Gardner Inc.” It is dated May 25, 1965. Written across the face of the submitted offer in handwriting is the following: “Will accept $37500 with Direct Offer For Both Lots” and “Rejected May 25/65.”
The following testimony of Mr. Katz on cross-examination is significant:
“A Yes, Trapani’s signs were up there because I helped to put them up there, and I went up there, I’d say a couple of weeks after, and there were no signs. Whether he took them down, the kids took them down, I don’t know. I put my sign up there, my own signs up.
“Q You remember getting, receiving this document here which is marked ‘P-B,’ being an offer made by the Carrollton Methodist Church?
“A That’s right.
“Q Through the medium of * * *
“A Gertrude Gardner.
“Q * * * Gertrude Gardner?
“A That’s only offer he ever submitted me.
******
“Q Through the medium of Gertrude Gardner as the Assisting Broker, made an offer to Mr. Trapani to purchase that property, through Trapani’s Office, for the sum seventeen thousand five hundred? You’ve seen that offer before?
“A Yes, sure, I seen it. I don’t know if this particular one was submitted. He submitted offer to me for one lot. I don’t know if it’s this one. My signature appears down on here, and it is customary when rejecting offer the owner should see it, and identify this offer at my signature.
“Q Do you remember receiving that offer, an offer * * *
“A I don’t know if this particular one.
“Q Is this particular one an offer?
“A Yes, through the office of Gertrude Gardner, yes, sir.
“Q You knew that the Carrollton Methodist Church was interested in the purchase of that property?
“A No, I didn’t know the client, no.
“Q The name does not appear on here ?
“A I didn’t see this offer. There might have been another or I didn’t see that offer. I didn’t reject that offer.”
There can be no doubt whatever that Mr. Katz knew of the offer and the name of the prospective buyer, for it was clearly disclosed. We attach no- credence to his above equivocation about seeing that particular offer which was marked “Rejected.”
Thereafter Mr. Katz was contacted by a representative of the Carrollton Methodist Church. On July 6, 1965, one of the lots was sold to the church for $20,000.
Mr. Katz has refused to pay the realtor’s commission for the alleged reason that Mr. Trapani was not engaged to sell the lot. He testified that he never listed property exclusively with realtors. He stated that he always dealt on the open market and customarily paid a commission of 3 percent *426 when a realtor found a purchaser for any of his property. In support of this contention he offered the corroboration of two real estate men. Even so, he has never offered .to pay the 3 percent to Mr. Tra-pani or to Gertrude Gardner, Inc.
It should be mentioned that Mr. Katz owns a large amount of property in New Orleans and has had extensive real estate dealings. One of his realtor witnesses testified to having negotiated sales of approximately a half million dollars for Mr. Katz: It is inconceivable that a person of his extensive real estate experience would sign an exclusive listing agreement in blank or without full knowledge of the obligation involved. It is also incredible that Mr. Katz would personally assist the agent to post the FOR SALE sign on his property without knowledge that in doing so, he was holding out to the public the fact that the realtor named was his agent authorized to sell the lots posted.
The sale was made by the owner direct to the prospect referred by plaintiff within the period of exclusive listing and the realtor is, therefore, entitled to- the commission stipulated in the agreement. In Acadian Inv. Co. v. Laird, 138 So.2d 429 (La.App.3d Cir. 1962), the court said:
“ * * * When the real estate broker has a contract giving him the exclusive right to sell the property during a specified period of time, he is entitled to a commission upon any sale of the property made during that time, whether the sale be made by the owner personally or by another broker. Donlon v. Babin, La.App., 1 Cir., 44 So.2d 134, and the many cases cited therein. Further, in holding the seller liable for a commission to a real estate agent for property sold subsequent to expiration of an exclusive listing agreement, the courts have placed great emphasis upon a violation by the seller of his contractual obligation to refer all offers to purchase to the real estate agent during the pendency of the agreement and have disallowed arguments that under the circumstances the private negotiations did not actually interfere in any way with the real estate agent’s efforts. Alex F. Dreyfus Co. v. Friedman, 171 La. 90, 129 So. 679; Doll v. Thornhill, La.App.Orl., 6 So.2d 793; Donlon v. Babin, cited above.” 138 So.2d at 431.
We are cognizant of our opinion in McKinney Realty Co. v. Kabel, 131 So.2d 567 (1961), wherein this court said:
“A real estate broker who has only an exclusive agency to sell is not entitled to a commission on sales made by the owner himself. He is entitled to a commission only on sales made by himself to purchasers produced by or through himself. Such a contract does not give the broker the exclusive right to sell the property; it simply precludes the owner from appointing any other agent during the life of the contract. O’Neal v. Southland Lumber Co., 168 La. 235, 121 So. 755. The jurisprudence clearly distinguishes the appointment as exclusive agent from the contract of employment conferring upon a real estate broker the exclusive right to sell, which latter entitles the broker to commissions on all sales during the life of the contract including those made by the owner. O’Neal v. Southland Lumber Co., supra; Donlon v. Babin, La.App., 44 So.2d 134.” 131 So.2d at 568. (Emphasis in the original.)
It is not necessary for us to distinguish exclusive agency from exclusive right to sell in this case, since the sale was made by the owner to the prospective buyer procured by the broker. In either event the seller is obligated for payment of the broker’s commission.
Plaintiff is entitled also to attorney’s fees of 25 percent, as stipulated in the listing agreement.
No issue is made of the fact that the lot in question was actually recorded in the name of Leonard A. Katz and that it was he who executed the deed to> the purchaser. Mr. Katz acknowledged that he was the *427 actual owner and that the property was purchased in his son’s name for convenience.
Plaintiff has answered the appeal seeking damages for frivolous appeal. While there is no. doubt whatever in our minds that the judgment rendered below was correct, we do not agree that this is an appeal in which the exercise of our discretion under LSA-C.C.P. art. 2164 would be fully justified.
The judgment appealed from in favor of Charles Trapani, doing business as Trapani Realty Company, against Samuel Katz in the sum of $1,200 plus attorney’s fees of 25 percent, with legal interest from judicial demand, is affirmed at defendant-appellant’s cost.
Affirmed.