EVERETT, Judge.
This is a concursus proceeding instituted by the law partnership of Sanders, Miller, Downing & Kean of Baton Rouge, which addresses itself to the proper distribution of a portion of a real estate commission. The contest is between Perkins & Son Realtors and Betts Realty. The real estate commission is due by virtue of the sale of a tract of land owned by a group which will be designated as the “McCrory Heirs”.
The entire commission due to the realtors was $37,196.00. Three-quarters of this amount has already been distributed. One-half has been distributed to Betts Realty and one-fourth has been distributed to Perkins & Son Realtors. This partial distribution was accomplished by agreement between the defendants in concursus. One-fourth of the total commission awaits distribution.
The McCrory Heirs were the owners of a 186 acre tract of land in Ascension Parish. On January 12, 1970, Eugene Mc-Crory, representing the McCrory Heirs sent to Mr. James W. Taylor of Perkins & Son Realtors, a letter with a rough sketch of the property indicating that he wanted Mr. Taylor to find a buyer and that the McCrory Heirs would accept $2,500.00 net per acre. It appears that there was no indication that Mr. McCrory was giving Perkins & Son Realtors an exclusive sale listing.
On April 6, 1970, the McCrory Heirs granted to Ned Betts of Betts Realty an exclusive listing of the property in question and this authority was signed by all of the McCrory Heirs.
In May, 1970, Mr. Bert S. Turner, President of Nichols Construction Company called Mr. Taylor of Perkins & Son Realtors and advised him that he was interested in some large tract of land in the Man-chac-Ascension Parish area. At that time, Mr. Taylor discussed with Mr. Turner the tract ultimately purchased by Nichols Construction Company and also some other 90 acre tract of land, also in the Manchac-Ascension vicinity.
Mr. Turner instructed Mr. Joe R. Milli-can, one of his assistants, to go out and view the 90 acre tract which he had discussed with Mr. Taylor. By coincidence, Mr. Millican passed by the McCrory tract, after viewing the 90 acre tract, saw that it was for sale and that Betts Realty was acting as the selling agent. Apparently Mr. Millican did not know that Mr. Taylor had talked to Mr. Turner about this tract and arranged for the property to be shown by Mr. Betts.
After Mr. Millican and Mr. Turner discussed the matter, they realized that they were speaking about the same tract of land, Mr. Millican to Mr. Betts and Mr. Turner to Mr. Taylor. Mr. Taylor immediately became concerned about a possible conflict over how the realtors’ commission might be divided. At this point it appears that Mr. Turner had dealt exclusively with Mr. Taylor of Perkins and Son Realtors *575 and Mr. Millican had dealt exclusively with Mr. Ned Betts of Betts Realty.
Mr. Turner felt that it was prudent to contact both realtors and advise them that he was concerned about the problem of the division of the realtors’ commission. Mr. Turner was told both by Mr. Betts and Mr. Taylor there was no problem concerning division of the commission. In the meantime, Mr. Taylor and Mr. Betts discussed the matter and there was no controversy over the division of commission at this point.
Having satisfied himself that there would be no conflict between the realtors, Mr. Turner, as President of Nichols Construction Company, authorized Mr. Taylor to sign as agent for the Nichols’ interest and offer the McCrory Heirs $2,500.00 per acre for the Property. In the “Agreement to Purchase” it was stipulated that the commission would be paid to Perkins & Son Realtors and Ned Betts. After some discussion among the McCrory Heirs, the offer was rejected and a few days later a new “Agreement to Purchase” was submitted to the McCrory Heirs, agreeing to pay the sum of $2,700.00 per acre, and again stipulating that the commission would be paid to Perkins & Son Realtors and Ned Betts.
There seemed to be some concern by the McCrory Heirs as to whether or not it would be more advantageous to accept the full sum in cash or to make arrangements to accept the purchase price in installments. Apparently this indecision by the McCrory Heirs carried forward until the time that the “Agreement to Purchase” was about to expire. It appears that there was a final and hurried meeting between the McCrory Heirs, Mr. Betts and Mr. Taylor wherein a final Agreement to Purchase was set out and, once again, it was stipulated that the commission would be paid to Perkins & Son Realtors and Ned Betts.
After the McCrory Heirs and representatives of Nichols Construction Company met at the offices of Sanders, Miller, Downing & Kean, the proper transfer and security instruments were executed and the transaction completed. Although the record is not clear, it appears that at that point the dispute over division of the commission surfaced. The attorney handling the transaction would not split the commission equally so Mr. Taylor said that he was confident that Mr. Betts would divide the commission according to local custom. After the two realtors had left the attorneys’ offices, Mr. Betts gave Mr. Taylor a check for 25% of the commission. The record is silent concerning events after that incident and the instant concursus proceeding followed.
Although there are some discrepancies in testimony, and these are considered minor, it appears that there was no serious dispute between the realtors until the matter was consummated. Both Mr. Taylor and Mr. Betts assured Mr. Turner that there was no problem on the matter of the division of the commission and both realtors seemed to have concentrated their efforts on going about the business of selling the property.
Ned Betts takes the position that he had the exclusive listing on the McCrory property and he first interested Mr. Millican in the property. Mr. Betts summoned Eugene R. McCrory, the apparent guiding hand of the McCrory Heirs in this transaction, who testified that the first that he knew Mr. Taylor was concerned with the transaction was when Mr. Taylor came to his home with Mr. Betts. Betts Realty also puts forth that it secured another tract for Nichols Construction Company, immediately adjacent to the McCrory tract, allowing Nichols Construction Company access to a rail-head and that this was an important element in the consummation of the entire transaction.
Perkins & Son Realtors, on the other hand, take the position that it was Mr. Taylor who first interested Nichols Construction Company in the McCrory tract; that Mr. Taylor played an aggressive role in pressing the entire matter to a conclusion and, without his advice concerning the taxation implications, the matter was about *576 to founder at the eleventh hour when the McCrory Heirs could not arrive at a decision relative to the terms of purchase, either cash or in installments.
The legal issue presented herein is rather narrow. Ned Betts advances the argument that he had the exclusive right to sell the property and is entitled to the entire commission and any distribution to Perkins & Son Realtors is strictly gratuitous. In support of that position, McKinney Realty Company v. Kabel, 131 So.2d 567, La.App. 4th Cir. (1961) is cited as controlling. In support of the position of Perkins & Son Realty, Gement v. Doby, 246 So.2d 253, La.App. 1st Cir. (1971) is cited as indistinguishable from facts presented in this matter.
We have examined the record carefully and we do not find that Mr. Taylor was in fact an agent for the purchaser and we cannot conclude that he had any specific mandate from the seller. We also find that in absence of some contractual relationship of principal and agent, Perkins & Son Realtors could not have validly claimed any portion of the commission and only if it established that some employment or agreement existed could there be some recovery on the theory of quantum meruit. Bender v. International Paint Company, 237 La. 569, 111 So.2d 775 (1959).
The above cited authorities notwithstanding, we conclude that the record discloses clearly that Ned Betts brought Perkins & Son Realtors in to assist in consummating the transaction successfully. The record further discloses that Mr. Betts and Mr. Taylor of Perkins & Son Realtors worked closely and that the efforts of Mr. Taylor were a procuring cause of the contract or transaction. Keating v. Lachney, 216 So.2d 906, La.App. 1st Cir. (1968) and Munson v. Alello, 199 So.2d 577, La.App. 1st Cir. (1967). The competing defendants in concursus both cite their own particular exemplary actions in consummating this transaction but we are satisfied that, notwithstanding individual efforts, this was a relationship of mutual advantage to both realtors and, in the absence of a specific agreement as to division of the commission, we should properly look to accepted usage among the local community of professional realtors.
Mr. L. Heidel Brown and Mr. J. Edward Reynolds, both respected realtors in the Baton Rouge vicinity, testified that in the absence of agreement to the contrary it was generally accepted that realtors who worked together to complete a transaction similar to the subject matter of this action divide the commission equally. This is the manner in which the District Court felt that the entire commission should be distributed and, accordingly, awarded the one-fourth of the total commission deposited in the Registry of the Court to Perkins & Son Realtors. We feel that the District Court was correct and we affirm the judgment of the District Court in its entirety.
The costs of court, including this appeal, is to be borne by defendant, Betts Realty.
Affirmed.