SCHOTT, Judge.
This is a suit by plaintiff Wagner & Truax Co., Inc. for real estate commissions of $5,352 and $3,000 on sales of property owned by defendant, Robert Harvey. Both parties have appealed from a judgment awarding plaintiff only its commission of $3,000 on the property located on Royal Street in New Orleans. The principal issues are whether the terms of a listing agreement made defendant liable for a commission of $5,352 on the property located on Simone Gardens in Jefferson Parish, and whether defendant’s signing the note as president of a corporation at the act of sale of the Royal Street property extinguished his personal obligation for the $3,000 balance of the commission.
On November 19, 1976, defendant executed and plaintiff accepted an agreement with respect to the Simone Gardens property, which provided:
“I/We employ you or your successors, exclusively, and, hereby give and grant you the sole and exclusive right, to sell same for.$89,000.00 . After 90 days owner may cancel this contract at his discretion.I/We agree to pay you or your successors, a commission of six (6) percent on the gross amount of any deal (agreement to sell or exchange) that may be negotiated during the existence of this agreement, or on the gross amount of any such agreement made within ninety days after the expiration or termination of this contract, with anyone to whom said property has been quoted, during the term of this contract, except where the property is listed exclusively with another Realtor.”
The agreement provided for an expiration date on May 19, 1977. During the term of this agreement plaintiff obtained from one Thomas Griner an offer to purchase defendant’s property for $89,000 which included the assumption of a mortgage defendant had given. This offer was rejected by defendant. On July 22, 1977, defendant was contacted by a saleslady from Doris Hebert Realtor, who advised him that she had a buyer for his property and asked him to sign both an agreement to sell his property to the same Griner for $89,200 as well as a listing agreement containing the same terms as those quoted above except that the price was for $89,200 and the new listing agreement contained the statement “This is a one client listing.” Defendant signed both agreements and the sale to Griner took place on August 8,1977.
In rejecting plaintiff’s claim for a commission on the sale the trial judge reasoned that defendant’s listing the property with the second agency on July 22 had the effect of cancelling the agreement with plaintiff and that the assumption offer obtained by plaintiff was inconsistent with the original listing agreement so that defendant was not obliged to accept it. In this court, plaintiff raises a number of issues for our consideration.
First, plaintiff contends that defendant’s listing with Doris Hebert could not constitute a cancellation of the agreement made with plaintiff. We agree. The language of plaintiff’s listing agreement authorizing defendant to cancel the contract after 90 days was no longer effective after the contract expired under its own terms. Once the contract expired on May 17, 1977, plaintiff had a vested interest in any sale made within 90 days after that termination date to a prospective purchaser produced by plaintiff during the term of the contract. However, we reach the same conclusion as did the trial judge that plaintiff is not entitled to its commission for another reason.
Under the terms of the listing agreement with plaintiff it waived its right to a commission on the sale of the property to a prospect it had produced “where the property is listed exclusively with another Realtor.” At the trial plaintiff attempted to prove by testimony of another real estate broker that Doris Hebert’s listing agreement was not the kind of exclusive listing spoken of in plaintiff’s contract because it was a one-client listing obtained simulta *876 neously with an agreement to purchase and sell. We are not persuaded by the testimony of this other real estate broker for the primary reason that his opinions were essentially legal opinions and conclusions which are within the province of the court to reach. This is a question of interpreting a document, which is the law between the parties, and deciding its effect under the facts and circumstances of this case.
In its brief to this court plaintiff relies on Arender v. Williams, 364 So.2d 1048 (La. App. 2nd Cir. 1978) and McKinney Realty Company v. Kabel, 131 So.2d 567 (La.App. 4th Cir. 1961), but these are inapposite. They distinguished between exclusive agency agreements and exclusive right to sell agreements, and held that a realtor is entitled to a commission on a sale made by the owner only if the agreement constituted an exclusive right to sell agreement. In the instant case, we are concerned only with the question of whether the agreement with Doris Hebert constituted an exclusive listing agreement such as to cancel defendant’s obligation to plaintiff under the first agreement.
We conclude under the plain wording of the second agreement that it was an exclusive listing as contemplated in the first agreement. The only difference of substance between the second agreement and the first was the condition that the second was a one-client listing. But this did not deprive it of its exclusivity. It conferred a commission on Doris Hebert to the exclusion of any other real estate agency and committed defendant to the payment of a commission to Doris Hebert. Defendant could not avoid payment of this commission to Doris Hebert on the Griner sale either by selling the property to Griner himself without notice to Doris Hebert or by selling the property to Griner through another realtor. We are unaware of any legal authority for plaintiff’s proposition that the Doris Hebert listing was not an exclusive listing under the terms of plaintiff’s listing agreement and have concluded that it was such a listing agreement so as to terminate defendant’s agreement with plaintiff.
Plaintiff also raises a procedural issue arising out of defendant’s answer which included the following allegations:
“VI.
Denied, defendant affirmatively pleads that pursuant to the contract in question defendant’s payment to his second agent who in fact, sold said property acts as a full and complete set off of any claims which may have existed in favor of petitioner.”
* * * * * #
“XV.
Denied, defendant affirmatively pleads that pursuant to the contract in question defendant’s payment to his second agent who in fact, sold said property acts as a full and complete set off of any claims which may have existed in favor of petitioner.”
Plaintiff contends that defendant’s use of the term “set off” had the legal effect of admitting his liability to plaintiff on the main demand. While it is true that set off or compensation takes place only when the parties are indebted to each other, C.C. Art. 2207 et seq., and is normally pleaded by way of a reconventional demand. C.C.P. Art. 1062, defendant’s answer taken as a whole clearly denies any liability to plaintiff and prays unequivocally for a dismissal of its suit. Under these circumstances we consider defendant’s use of the term “set off” as inartful but not fatal to his defense.
Plaintiff argues further that defendant did not plead that the “listing” with Doris Hebert constituted an exclusive listing agreement and consequently his defense was not properly before the court. This and other deficiencies in defendant’s answer did not prevent a trial of the issues. Not only did defendant put on his evidence relative to the listing agreement he gave to Doris Hebert but plaintiff attempted to rebut that evidence with the testimony of its expert witness and other witnesses it called. Under C.C.P. Art. 1154, the pleadings could have been amended but failure to do so did not affect the result of the trial of these issues.
*877 Turning next to defendant’s appeal from plaintiff’s judgment for $3,000 on the Royal Street property, the evidence shows that plaintiff sold the property and earned a commission of $19,680. At the act of sale defendant took a third mortgage for a portion of the purchase price and there was a shortage of $3,000 in cash for the payment of this commission. Anticipating this problem, plaintiff had agreed to take a note for $3,000 from defendant and that note was prepared by plaintiff and given to defendant to sign at the act of sale. Defendant signed the note “Robert Harvey, Pres., Pontchartrain Assets, Inc.” However, neither of two of plaintiff’s representatives present at the act of sale was aware of this corporate signature and had never discussed with defendant any proposal to accept a corporate note. In this court defendant argues that a notation occurred but there was clearly no meeting of the minds between these parties as required for a contract of novation, C.C. Art. 2185, et seq. The obligation sued on was the agreement to purchase and sell. Defendant owed a balance of $3,000 under that obligation and nothing occurred to prevent plaintiff from enforcing it.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.