272 So.2d 53 (1973)
LATTER & BLUM
v.
OCEAN DRILLING & EXPLORATION COMPANY.
No. 5191.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1973.
Rehearing Denied February 6, 1973.
Writ Refused April 12, 1973.
*54 J. William Vaudry, Jr., of McCloskey, Dennery & Page, New Orleans, for plaintiff-appellant.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Murphy Moss, New Orleans, for defendant-appellee.
Before REGAN, BOUTALL and BAILES, JJ.
REGAN, Judge.
Plaintiff, Latter & Blum, Inc., a realtor filed this suit against the defendant, Ocean Drilling and Exploration Company (ODECO) to recover unpaid commissions which it alleged was due in conformity with a rental listing contract. Plaintiff asserted that it was the exclusive rental agent for leasing all of the eighth and a portion of the ninth floor of the ODECO Building under its agreement with the defendant, particularly that clause binding defendant to refer all prospective tenants to the plaintiff. Plaintiff claimed that the defendant breached the contract when it negotiated a lease directly with Southdown Sugars, Inc., for a substantial amount of the space covered by the listing contract and then refused to pay the 6% commission due the realtor.
Defendant answered and explained therein that the plaintiff had breached the contract before it negotiated directly with Southdown by endeavoring to place a prospective tenant interested in the ODECO Building in another office building. In effect, the defendant claimed that the plaintiff breached its obligation to act in a fiduciary capacity. Defendant reconvened for damages for loss of rentals due to negligent administration.
From a judgment dismissing both the main and reconventional demands, only the plaintiff has appealed.
The record discloses that the plaintiff was the leasing agent for the ODECO Building and that the defendant negotiated its lease for more than six floors of space therein with plaintiff's agents. Although defendant had no immediate use for the eighth floor and a portion of the ninth, it leased the space anticipating future expansion. On December 11, 1968, defendant entered into an agreement with plaintiff appointing it rental agent to sublease its excess space. The portion of this contract pertinent to the issue before us reads:
"The undersigned (ODECO) * * * hereby engages Latter & Blum, Inc * * * as Sublessor's exclusive agent to rent all of the eighth floor and a portion of the ninth floor of the ODECO *55 Building * * *. This contract shall remain in full force and effect for a period of one (1) year after completion of construction of said building.
"Said premises may be leased to one or more tenants, for periods of one (1) to three (3) years, the periods of said leases to be determined by Sublessor * * *

* * * * * *
"Sublessor shall have the right, on written notice to Agent, to withdraw from this listing contract, from time to time, any part of the premises covered thereby.

* * * * * *
"Sublessor agrees to refer all prospects for the leasing of said premises to Agent and Agent shall conduct all negotiations for the leasing of said premises.
"Agent agrees to make all reasonable efforts to find a tenant for said premises.

* * * * * *
In the early part of April 1969, through the efforts of plaintiff's agents, Seymour Hirsch and Percy Johnson, the entire eighth floor had been rented to four tenants, namely, Home Data Processing; Ruhlman, Profumo and Associates; Coastal States Gas, and C. G. Bizot.
In late April or early May of 1969, Herbert Vaccaro of Southdown Sugars, Inc., contacted Latter & Blum to inquire if space was available in the ODECO Building. Hirsch informed him that there was not enough space available for Southdown's needs. Instead Hirsch suggested Vaccaro consider the Plaza Towers, another building where plaintiff possessed an exclusive leasing agency.
On May 13, 1969, following a meeting with Southdown's representatives, Hirsch, plaintiff's agent, submitted to them an offer to lease the entire 34th floor of the Plaza Towers for $3751.58 per month for a primary term of ten years and 1000 to 1200 square feet on the 33rd floor for a comparable rate. In addition the offer included a call option for an additional 1800 to 2000 square feet on the 33rd floor and a call option for the remainder of the 33rd floor in six years.
On May 16, 1969, Southdown rejected the offer for the reason that the rent was too high for only 6222 square feet of effective floor space on the 34th floor. Southdown offered to pay $3091.92 per month for the 34th floor of the Plaza Towers and insisted on the right to sublease. The counter offer was rejected.
By the time Hirsch and Johnson were aware of the fact that the counter offer had been rejected, or in mid-May, they also knew space had become available in the ODECO Building. Both Home Data Processing and Ruhlman, Profumo and Associates had advised Hirsch and Johnson that they wished to vacate the ODECO Building and requested that the agents find tenants to sub-sublease their office suites. Plaintiff obtained listing agreements from both subtenants. In the latter part of July on a weekend, without any notice to ODECO, both Home Data and Ruhlman moved out of their offices and both were two months in arrears of their rent.
Meanwhile, plaintiff's agents continued negotiating with Southdown for space in the Plaza Towers and on August 21, 1972, the realtor submitted an offer to Southdown which was still unacceptable. Plaintiff's agents Hirsch and Johnson never mentioned Southdown's inquiry about space in the ODECO Building to defendant's representatives nor did they advise Vaccaro of Southdown that space had become available in that building and offer to show it. Hirsch justified this omission by stating that Southdown needed more space and a long term lease with a minimum term of ten years to justify the expense of installing leasehold improvements. He also pointed out that the space subject to call options in the Plaza Towers was not available in the ODECO Building.
*56 Vaccaro's testimony contradicts Hirsch's assertion. He stated that it was plaintiff's agents who endeavored to impose a long term lease on Southdown and the ten years minimum duration was entirely Hirsch's idea. At one point Southdown agreed to and was negotiating for a maximum of five years.
Finally in August 1969 after Southdown terminated the negotiations for space in the Plaza Towers, Vaccaro was informed by J. B. Storey, connected with an affiliated company, occupying offices in the ODECO Building, that space was available. Vaccaro contacted the president of ODECO, Alden LaBorde, about renting space. LaBorde referred Vaccaro to the plaintiff and at this point Vaccaro disclosed the fact that Hirsch and Johnson had previously informed Vaccaro that there was no space available. It was then that LaBorde instructed Charles Howe, manager of the defendant's service division, to cancel the listing agreement with the plaintiff covering the vacant space on the eighth floor.
When Howe received this instruction from LaBorde, he had been working with Hirsch and Johnson to negotiate a lease for the vacant eighth floor space with F and A Map Company. LaBorde told him to discontinue the negotiations because ODECO would not complete the lease forms that had already been signed by F and A Map Company.
ODECO then leased directly to Southdown approximately 7128 square feet on the eighth floor. In November 1969 Bizot, one of the original eighth floor tenants vacated and Southdown signed an amended lease to incorporate this space dealing directly with ODECO. At that time the defendant advised plaintiff by letter that the listing agreement was cancelled.
Plaintiff insists that it is entitled to commissions of the Southdown lease signed in August and the amended lease executed in November of 1969. Its claim is based on that portion of the listing agreement requiring the defendant to refer all prospective tenants to its agent. Plaintiff assumes the position that this clause conferred on it the exclusive right to rent the available space.
It is argued that the agreement at issue herein is analogous to contracts granting a broker the exclusive right to sell property. Plaintiff relies on several cases holding the seller of real estate liable for the agent's commission when the seller deals directly with the buyer and negotiates his own sale during the period covered by the listing agreement.[1]
Defendant, on the other hand, argues that the plaintiff was given the exclusive right to act as an agent but defendant reserved to itself the right to withdraw space from time to time. Defendant insists that it also possessed the right to rent space and relies on the rule enunciated in McKinney Realty Company v. Kabel[2]. That case points out the distinction between an exclusive right to sell as opposed to an exclusive right to act as agent. In the former, only the agent may negotiate the sale. In the latter, the owner is free to sell himself but he is limited to appointing only one agent during the life of the listing agreement.
We are of the opinion that the contract posed for our consideration does not reserve to the defendant the right to execute leasing agreements independent of the relator and thus avoid liability for the agent's commission. Although the instrument reserves to the defendant the right to withdraw space covered by the agreement it also requires defendant to refer all prospective tenants to the agent. In reaching *57 this conclusion we are not unmindful of the provisions of LSA-C.C. art. 1955 which reads:
"All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act."
Thus in reading this agreement in its entirety, we are of the opinion that the listing agreement gave the relator the exclusive right to negotiate leases during the life of the contract.
However, we find merit in defendant's alternative contention that the plaintiff had breached its contract before the first Southdown lease had been negotiated. We are convinced that the plaintiff failed to comply with its obligation to "* * * make all reasonable efforts to find a tenant for said premises."
Southdown's first inquiry to plaintiff concerned space in the ODECO Building. While it is true that none was available at the time, Hirsch and Johnson, plaintiff's agents, were aware within several weeks that considerable space would be available for rent. Once Southdown rejected the Plaza Tower offer, the agent could have offered to show what space was available in the ODECO Building. It will be recalled that the 34th floor of the Plaza Tower had some 6200 square feet of effective space and Southdown was ultimately able to rent 7128 square feet on the eighth floor of the ODECO Building.
Although plaintiff's agent, Hirsch, partially justified his failure to mention the available space to Southdown or to mention Southdown's inquiry to ODECO representatives because Southdown wanted a long term lease, this assertion is contradicted by Vaccaro of Southdown. According to Vaccaro the agents were attempting to oversell by insisting on a long term lease Southdown did not want.
Defendant, conversely, acted in good faith until it became apprised of the actions of plaintiff's agents with Southdown's representatives. When Vaccaro of Southdown first called upon defendant's president, he was referred to the plaintiff. It was not until he learned that plaintiff's agents, Hirsch and Johnson had made no effort to show the vacant space to Southdown that LaBorde of ODECO decided to negotiate the lease directly. Once he learned of the breach, he was justified in acting as set forth hereinabove.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] See Alex F. Dreyfus v. Friedman, 171 La. 90, 129 So. 679 (1930) and Doll v. Thornhill La.App., 6 So.2d 793 (1942).
[2] La.App., 131 So.2d 567.