435 So.2d 1069 (1983)
Abe MILLER, et al.
v.
AGUILAR/WILSON, INC.
AGUILAR/WILSON, INC.
v.
Abe MILLER, et al.
Nos. 82 CA 0800, 82 CA 0801.
Court of Appeal of Louisiana, First Circuit.
June 28, 1983.
Rehearing Denied August 23, 1983.
Stephen M. Irving, Allen W. Helm, III, Baton Rouge, for Abe Miller, et al.
Winston Riddick, Baton Rouge, for Miller Timber.
Dale M. Maas, Cornelius J. Hyde, III, Baton Rouge, for Aguilar/Wilson, Inc.
Before PONDER, SAVOIE and CRAIN, JJ.
CRAIN, Judge.
This is an appeal of a judgment of the trial court which dismissed plaintiffs' suit *1070 for declaratory judgment to void a real estate listing agreement, and in a companion suit granted a realtor's commission.
On or about March 7, 1980, Abe Miller and Paul L. Miller (the Millers), appellants herein, executed a series of five (5) exclusive realty listing agreements with Aguilar/Wilson, Inc. (A/W). These agreements were for a one year period and provided a 10% commission for sale by A/W of property belonging to Miller Timber Company, Inc. The corporation was having serious cash flow problems and was unable to meet its obligations. In order to do so it became necessary to attempt to sell corporate assets in an effort to generate revenue. The Millers individually signed the listing agreements with A/W.[1] The urgency of the situation and the need for fast action from A/W in their efforts to sell land owned by the corporation were stressed. However, the Millers were advised that it would take time to market their property and agreements were signed by Sarah Carter, (Carter) an agent for A/W and a personal friend of the Millers, with a one year term.
The record reflects efforts by A/W to market the property. The efforts produced one offer from Robert E. Richardson on June 17, 1980. The offer proposed to pay $1,000,000.00 for all of the 1,312 listed acres and mineral rights to all acreage except that already in production. This offer was for less than ½ of the listing price of $2,332,800.00. The Millers rejected the offer and made no counter offer.
Relations between the Millers and A/W and Carter deteriorated rapidly, and Abe Miller began to think about cancelling the listings because he felt Dr. Rudolfo Aguilar, president of A/W, was not taking an active enough role in the efforts to sell the corporate assets. Several conversations and a meeting followed, but the listing was not cancelled.
On June 10, 1980, Abe Miller submitted to Carter a list of large landowners owning property in the vicinity of the property of Miller Timber Co., Inc. in Claiborne Parish who might be prospective purchasers. By June 24, 1980, the prospects had not been contacted by A/W. On that date the Millers sent a letter to A/W cancelling the exclusive listing agreement and substituting a non-exclusive listing agreement. Abe Miller then began contacting these parties and eventually began negotiations with one of those named on the list, Justiss Mears Oil Company, Inc. (Justiss Mears).
On August 29, 1980, the Millers filed suit to cancel the listings on the ground that A/W breached their obligation by failing to diligently try to market the Millers' land.
In October, 1980, Miller Timber Co., Inc. was placed in voluntary liquidation and, on October 23, 1980, the liquidator sold all lands, mineral rights, standing timber and lumber inventory to Justiss Mears for $1,278,697.40. On May 12, 1981, A/W filed suit to collect a 10% commission on the sale price to Justiss Mears.
The suit filed by Millers was consolidated with the suit filed by A/W. After trial, the court rendered judgment in favor of A/W's claim for a 10% commission, awarding $127,869.74 plus legal interest, and against Millers' suit for declaratory relief.
Although Millers' original suit sought to have the listings cancelled alleging four alternative theories, the only error complained of in this appeal is that the trial court erred in holding that a disobedient agent is entitled to a commission.
Specifically, the Millers contend on appeal that a broker has a duty to execute the orders of a principal, and, where it fails or refuses to do so, the broker is not entitled to a commission. Assuming this to be a correct statement of the law, the trial court found the realtor made diligent efforts to produce a buyer and ordered the commission paid. We agree. The record contains ample evidence of diligent efforts on the part of A/W. Under an exclusive listing agreement, the broker is entitled to his *1071 commission on a sale made during the term of the agreement whether or not his efforts contribute to the sale. Burr v. Leguin, 365 So.2d 1156 (La.App. 3rd Cir.1978), writ denied 367 So.2d 862 (La.1979).
The trial judge found that the list of prospective buyers was furnished to A/W by the Millers. This finding is disputed by A/W and Carter, but we find no manifest error in the ruling of the trial judge. However, we also find no failure or refusal on the part of A/W to follow the Millers' orders. The record reflects that the list was given to A/W on June 10, 1980, and that the Millers attempted to cancel A/W's exclusive listing on June 24, 1980, substituting a non-exclusive listing. We conclude A/W did not have ample time to follow the leads even if aware of them. The cases cited by appellants in support of their contention that the exclusive listing agreement should be cancelled because of the broker's failure or refusal to carry out the seller's instructions are thus distinguishable from the instant case. In Latter & Blum v. Ocean Drilling & Exploration Co., 272 So.2d 53 (La.App. 4th Cir.1973), the realtor had an exclusive rental listing, but intentionally diverted prospective tenants to another lease area which the realtor also had listed. We have no such intentional breach of duty in the instant case. In Robert N. Samuels, Inc. v. Michaels, 315 So.2d 63 (La.App. 4th Cir.1975), the realtor had a client interested in leasing either of two properties exclusively listed with the realtor. The realtor informed his client that he had a conflict and would negotiate on the other property. When the rental did not materialize and the client subsequently leased the property without the aid of the realtor the court found that the broker had intentionally refused to perform the contract.
Consequently, in both of the above cases there was a clear intentional refusal to market the seller's property. The evidence presented in this case will not support a similar conclusion.
The Millers also allege that the commission due to A/W in the amount of $127,869.74 is excessive since $350,000.00 of the purchase price was for lumber inventory not included in the listing agreements. We agree. A/W contends that payment on the lumber inventory is compelled by the following language in the listing agreements:
"We agree to pay the REALTOR'S fee amounting to ten percent (10%) of the selling price."
However, the language of the listing agreements is limited specifically to a description of the acreage to be sold, minerals and standing timber thereon. No mention is made of the sale of, or commission related to the sale of lumber inventory on the properties listed. "Selling price" as used in the listing agreements, does not refer to the sale of anything not specifically listed in the agreements. Since the sale to Justiss Mears netted $928,697.40 for the land, minerals and standing timber listed in the agreements, the commission should be reduced to the sum of $92,869.74.
For the reasons assigned, the judgment of the trial court is affirmed insofar as it dismisses Millers' suit for declaratory relief and awards a 10% commission to A/W in 82 CA 0800. The judgment is amended to award the sum of $92,869.74 to A/W as their commission on the sale of the listed properties in suit number 82 CA 0801. Costs of this appeal are to be borne equally by the parties.
AFFIRMED IN PART AND AMENDED IN PART.
NOTES
[1] In the trial court the listing agreements were attacked as invalid because there was lack of proper authority for the Millers to bind the corporation to the listing agreements. This contention has been abandoned on appeal.