FRUGÉ, Judge.
This is a suit by a real estate brokerage firm (“Acadian”) to recover a commission for the sale of a plantation. The plaintiff appeals from the dismissal of its suit.
On September IS, 1959, the defendant Laird executed an exclusive listing agreement with the plaintiff Acadian, whereby the latter was appointed the exclusive agent to sell a 1275-acre plantation owned by the Island Planting Company, Inc. (This corporation was made a co-defendant; Laird is its president and the stock in it is entirely owned by members of his family.) Plaintiff’s commission was to be five per cent of the sales price.
By the agreement, the plaintiff Acadian was given this exclusive right to sell the property until January 1, 1960. The contract further provided, however, that Laird was nevertheless liable for the stipulated commission if within one year after termination of the listing agreement the plantation was sold “to anyone to whom this property has been exhibited, quoted or offered for sale” by Acadian. Further, by another clause, Laird specifically agreed to refer to Acadian any offers to purchase the property made directly to him.
The evidence shows that the plaintiff Acadian was represented by its agent, La-Borde, in all transactions concerning the listed property. Although LaBorde showed the property to two prospects and attempted to interest approximately three more, he was unable to procure a sale of the plantation prior to the expiration of the exclusive listing agreement on January 1, 1960.
On January 14, 1960, about two weeks after the expiration date of the listing agreement, the co-defendant corporation (through Laird as president) sold about eight hundred acres of the listed property to James D. Tanner and Curry Cason for $172,305.
The plaintiff-appellant contends that the defendants are liable to it for its broker’s commission upon the sale of the 800-acre portion of the plantation previously listed with it for sale, because in violation of his contractual obligation, the defendant Laird had dealt directly with Tanner and Cason, the ultimate purchasers, prior to the termination of the exclusive listing agreement on January 1, 1960, without having informed the plaintiff of these negotiations.
The evidence shows that, upon hearing a rumor that the defendant Laird was negotiating with Tanner and Cason for the sale of the property, the plaintiff’s agent, La-Borde, visited these latter gentlemen on December 24th, one week before the expiration of the exclusive listing agreement. As the trial court noted, LaBorde’s apparent purpose was merely to verify these negotiations and not to sell the property. LaBorde did not inform these prospective purchasers that he was Laird’s agent for the sale of the property, nor did he attempt to sell them all or part of the property. After questioning them about their agreement with Laird, LaBorde left his business card and told them to call upon him if he could help with the sale.
The evidence further shows, as LaBorde was informed, that, at some date before December 24th, during the term of the exclusive listing agreement, Laird had indeed entered into an agreement to sell to Tanner and Cason the 800-acres later purchased by them (about half of the plantation listed with the plaintiff), to be effective, however, only if the plaintiff was unable to secure a purchaser for the entire acreage by January 1st.
It seems that H. B. Staples, another real estate agent, initially interested Tanner and Cason in the purchase of the property. The prospective purchasers denied that Staples informed them that he was acting as broker for Laird in the matter. However, the ulti *431 mate purchasers (through Staples) later reached a tentative agreement with Laird to buy the 800-odd acres which were subsequently purchased. (It should be noted that this tentative agreement was directly contingent upon whether or not plaintiff would sell the entire plantation during the period of its exclusive listing.) Although Laird testified on other matters, and although the record shows that Staples was present in the courtroom, neither the plaintiff nor the defendants sought to produce testimony from either of them concerning whether Staples had been authorized by Laird to try to sell the plantation, despite his exclusive listing agreement with the plaintiff.
Further, it is not denied that, despite the contractual obligation to refer offers to purchase the property to the plaintiff real estate agency, Laird did in fact fail to inform it of his negotiations with Tanner and Cason to sell them part of the property (contingent upon the plaintiff’s failure to sell the entire property during the period it had obtained the exclusive listing agreement) .
Under these facts and the applicable jurisprudence, the plaintiff has made out a strong case. When the real estate broker has a contract giving him the exclusive right to sell the property during a specified period of time, he is entitled to a commission upon any sale of the property made during that time, whether the sale.be made, by the owner personally or by another, broker. Donlon v. Babin, La.App. 1 Cir., 44 So.2d 134, and the many cases cited therein. Further, in holding the seller liable for a commission to a real estate agent for property sold subsequent to expiration of an exclusive listing agreement, the courts have placed great emphasis upon a violation by the seller of his contractual obligation to refer all offers to purchase to the real estate agent during the pendency of the agreement and have disallowed arguments that under the circumstances the private negotiations did not actually interfere in any way with the real estate agent’s efforts. Alex F. Dreyfus Co. v. Friedman, 171 La. 90, 129 So. 679; Doll v. Thornhill, La.App. Orl., 6 So.2d 793; Donlon v. Babin, cited above.
In brief, counsel for the plaintiff-appellant states:
“We think the record clearly shows that the defendant acted in bad faith, as defined by the Supreme Court, in dealing with prospective purchasers both individually and through another agent, while the contract was in force and while plaintiff was continuing his efforts to sell the property. Plaintiff is asking only his pro rate commission on the actual sale as made by defendant, and we think that both legally and equitably he is entitled to it. * * *
“Although the actual passage of title here took place a few days after the primary term of the listing agreement, it was generally known that defendant had agreed to sell half of the property to Tanner and Cason. Plaintiff got this information directly from the purchasers themselves. * * * The very fact that it was generally known in the community that the property had been sold would nullify all prior and future efforts of the plaintiff.
“Our position is flatly this: that when the defendant dealt with plaintiff in the manner in which he did, in strict violation of his agreement, this entitled plaintiff to his commission on the basis of previous efforts to sell the property, even though he had no part in the sale to Tanner and Cason.”
The trial court held that the decisions relied upon by the plaintiff were not applicable to the present case because of distinguishable facts. As stated by the trial court’s opinion:
“Upon examination, it appears that somewhat varying bases were used in the cited cases for the holdings that the property owner became liable for the commission by dealing directly and not referring his prospects. However, the *432 dominant thought appears to be that in such cases the owner has breached the contract by interfering with the agent and depriving him of the opportunity of contacting the prospect and arranging the sale himself as he was employed to do. Beyond this there appears no binding generalization.
“Accordingly, in such a situation the agent need do nothing to protect his interests. The contract itself furnishes his protection. However, a different situation may be presented when the agent learns of his principal’s prospect and calls upon him with reference to sale of the property. Clearly, the agent has the right to contact the prospect, because the procuration under which he acts has no limitations in that respect, and the further right to attempt to make the sale, because that is what he was employed to do. In such a case he would be entitled to his commission if the prospect refused to deal with him and later bought directly from the owner with whom he had been negotiating, for the reason that the agent can not be arbitrarily excluded from the transaction.
“Here the facts are entirely different. By his own testimony, Mr. LaBorde concedes that all he did was to call on Tanner and Cason, advise them that he had the Laird place for sale and offer to help them in purchasing it. Admittedly, he made no effort to interest them in all or any part of the property, or even to obtain a refusal to deal with him. * * *
“In short, plaintiff was not deprived, by reason of Laird’s breach of contract, of the opportunity to sell to his prospect. The reason for the rule failing, then the rule itself must fail, with the result that plaintiff can not recover under the doctrine of the cases heretofore di scussed.
“Additionally, it might be said that it can be admitted that the actions of Laird were characterized by bad faith without adding plaintiff’s cause, because of the course of action taken by the latter. Mr. Laborde knew that Laird would accept a purchaser for the entire property and, yet, the agent did not produce an interested prospect, Mr. Newton, or even continue his negotiations with him, in order to do what his firm had been employed to accomplish. These circumstances militate strongly against the justice of plaintiff’s claim.
“This brings us to the issue pleaded by plaintiff in its petition' — that the property was sold, after the brokerage contract had expired, to parties to whom plaintiff had quoted it during the contract term. Here again the plaintiff can fare no better. It seems sufficient to say that the reason behind the contract, and the law which supports it, requires that the quoting or offering of the property to be sold must be in the course of a genuine effort to effect a sale. The testimony is convincing that such was not the case here. * * * ”
Ultimately, we accept the trial court’s conclusion that, for the reasons stated by it, the defendants are not liable for the real estate agent’s commission under the particular circumstances reflected by this record, especially since it is clearly shown that the plaintiff’s efforts were not a procuring cause of the subsequent sale, and that the agreement to sell part of the property con-fected during the exclusive sales agency was specifically subordinated to the right of the plaintiff to produce a buyer for the entire property during the existence of the exclusive listing agreement.
For the foregoing reasons, the judgment of the trial court is affirmed. The plaintiff-appellant is to pay the costs of this appeal.
Affirmed.