330 So.2d 695 (1976)
Robert COPPAGE
v.
Victor CAMELO.
No. 7237.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1976.
Richard A. Kuntz, Schroeder, Kuntz & Miranne, New Orleans, for plaintiff-appellant.
William A. Summers, III, Metairie, for defendant-appellee.
*696 Before REDMANN, BOUTALL and MORIAL, JJ.
REDMANN, Judge.
A real estate agent appeals from the dismissal of his suit for commission on a sale of property made four months after the expiration of his listing agreement, to an adjacent landowner long interested in the property, whom plaintiff did visit during the agreement.
The listing agreement provided for a commission to the plaintiff on any "agreement [to sell or exchange] made within 180 days after the expiration or termination of this contract, with anyone to whom said property has been quoted, during the term of this contract."
The listing agreement on defendant's Clearview Parkway lot in Jefferson Parish, pricing it at $35,000, was made February 5, 1973, for a six-month term. We pretermit discussion of its obliging plaintiff to nothing more specific than "efforts to find a buyer". Plaintiff tried to sell the lot by posted sign and by newspaper advertisement and also by one visit to the owner of the surrounding lots, and he did receive one offer of $25,000 for the lot from another person during the six months he was to have made "efforts to find a buyer."
The adjacent owner, operating a greenery or nursery on his own lots and even using defendant's lot for customer parking and sod storage, was the most obvious prospect as a purchaser (as plaintiff testified). In fact, that adjacent nurseryman had asked defendant several times during the previous several years to sell the lot to him, but they did not agree on price. (The price range of their discussions is not shown.)
When plaintiff and his employee called on the nurseryman (he says in March or thereabout; they say in June), he put them off by asserting that he was not interested, that, as plaintiff's employee testified, "he did not want to pay for the real estate agent." The nurseryman testified he told them "you don't need to talk to me, about the land next door, I know all about it and I know who owns it and . . . I said, listen, let me tell you right now, there is no way I am going to buy it through a real estate [sic], I said, if I am going to buy it, you take your best shot and try to sell it, if I lose it it is okay."
The nurseryman did ultimately buy the lot, for $29,500, in December 1973, and this suit followed.
Our factual context is not that for which the contractual clause in question was designed. Except that plaintiff's production of only one offer for land on a major Jefferson Parish street during the entire six months conceivably might have reduced the owner's idea of the land's market value, and except that plaintiff's efforts to sell might have made the nurseryman more aware of the possibility that defendant could sell his land to another and thus make it unavailable to the nurseryman, plaintiff seems to have had nothing to do with the nurseryman's purchase. Plaintiff's "efforts to find a buyer" did not find this buyer, and we conclude it would be an overstatement to say that plaintiff produced this sale.
While we recognize the serious problem an agent faces in protecting his entitlement to a commission when he has in reality sold the property, and we recognize the difficulty of phrasing an enforceable contractual provision to protect him, we believe that "quoted" means at least that the price be stated. The trial judge apparently believed the testimony contradicting plaintiff's assertion that a price was quoted to the nurseryman, since (as plaintiff's employee testified) the nurseryman promptly told plaintiff that he was not interested in dealing with him. We cannot say that that factual conclusion is not reasonably supported by the evidence.
Affirmed.