338 So.2d 133 (1976)
Thomas Gilbert HARKEY d/b/a T. G. Harkey Realtor, Plaintiff-Appellant,
v.
Addie Kiper GAHAGAN, Defendant-Appellee.
No. 12955.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1976.
Rehearing Denied, November 1, 1976.
*134 Freyer & Freyer by Sam A. Freyer, Shreveport, for plaintiff-appellant.
Nelson & Achee, Ltd., by Harry R. Nelson, Shreveport, for defendant-appellee.
Before BOLIN, PRICE, HALL, MARVIN and JONES, JJ.
En Banc. Rehearing Denied, November 1, 1976.
JONES, Judge.
The Constitution provides in part that when a judgment of a district court is to be modified or reversed and one judge of the court of appeal dissents, the case "shall be reargued before a panel of at least five judges prior to rendition of judgment." La. Const. Art. V, § 8(B) (1974).
The original consideration of this appeal by a three-judge panel produced this result and the case was reargued before a fivejudge panel.
T. B. Harkey, a realtor, and Mrs. Addie Kiper Gahagan entered into a real estate listing contract on Dec. 28, 1973. The agreement provided that Harkey was to have the exclusive right to sell Mrs. Gahagan's 11.14 acres for a period of 12 months, with a 12 month extension clause. The sale price was to be $15,000 per acre, which would result in a total price of $167,100. On June 6, 1975, some 5 months after the expiration of the primary term of the agreement, Mrs. Gahagan sold the 11.14 acres covered by the listing agreement, along with 2.14 acres of adjacent land and her home located thereon, to Don Coleman. The price for this 13.28 acres, plus the residence was only $150,000, some $17,000 less than the price originally asked for the 11.14 acres covered by the listing agreement. Harkey sued, seeking to enforce the collection of a 6% commission allegedly due under the listing contract.
The trial court rejected plaintiff's demand. We affirm.
At the time the contract was executed, defendant advised Harkey that Coleman had expressed an interest in the property at a prior time. Coleman had offered $150,000 for the 13.28 acres before defendant executed the listing contract. After Harkey obtained the contract, he telephoned Coleman and told him that he had 11.14 acres of *135 the property listed, and the terms thereof. Coleman advised Harkey he was not interested in the property. The record reflects no further contact between Harkey and Coleman during the existence of the primary contract.
The trial court, in its reasons for rejecting plaintiff's demands, held that the sale consummated after the expiration of the listing agreement was outside the scope of the listing agreement because the price was substantially reduced and there was substantial difference in the property sold from that in the listing agreement. Circumstances such as these do not necessarily deprive the realtor of the right to his commission, if he is otherwise entitled thereto. Corbitt v. Robinson, 53 So.2d 259 (La. App.2d Cir. 1951); Slimer v. White, 275 So.2d 468 (La.App. 2d Cir. 1973).
As an additional reason for denying plaintiff's claim for his commission, the trial court held that plaintiff was not the procuring cause in consummating the eventual sale between purchaser and defendant.
`Procuring cause' refers to the efforts of a broker in introducing, producing, finding or interesting a purchaser, and means that negotiations which eventually lead to a sale, must be the result of some active effort of the broker. Lehmann v. Howard, 49 So.2d 453 (La.App.2d Cir. 1950); Womack Agencies v. Fisher, 86 So.2d 732 (La.App., 1st Cir. 1956).
The plaintiff did not find the purchaser nor did he interest the purchaser in acquiring the property, nor can it be remotely said that he began any negotiations with the purchaser for acquisition of the property. The trial court was therefore correct in holding that plaintiff was not a procuring cause to the transaction.
The listing contract between plaintiff and defendant contained the following extension clause:
"This employment and authority shall continue for the period of twelve (12) months from date hereof. I agree to pay said agent 6% percent of the selling price as and for the compensation of said agent hereunder in the event of a sale or an exchange of said real property by said agent or by any other agent or person, including myself, while this contract is in force, or if sold or exchanged within twelve (12) months after termination to anyone with whom said agent or owner had negotiated or to whom this property had been shown or submitted prior to the termination. . . ."
Plaintiff contends he is entitled to recover the real estate commission because the extension clause had been activated by his telephone call to Coleman and therefore he was entitled to his commission on any transaction which occurred between Coleman and defendant for a period of 12 months following the expiration of the primary term.
The purpose of the extension clause in a real estate listing contract is to insure the realtor's right to a fee when the property owner sells the property subject to the listing after the expiration of the primary term to a purchaser who had been located or otherwise interested in the property by the realtor's effort. The realtor does not have to be the procuring cause in order to activate the extension clause. He need not have been involved in active negotiation with the purchaser at the time of the expiration of the primary term. However, his activities must have been the cause of creating some minimal interest in the purchaser which contributed to bringing about the eventual sale.
Illustrative of the interpretation and construction given to extension clauses by courts of other states is Hammerstad v. Saunders, 6 Wash.App. 633, 495 P.2d 349, 51 A.L.R.3d 1145 (1972). In that case a realtor had an exclusive listing contract providing that the realtor would be entitled to his commission in the event the property was sold by the owner to any person to whom it had been offered by the realtor or with whom the realtor had negotiated during the primary term. During the primary term one of the realtor's employees, while showing some 40 pieces of property to a prospective *136 purchaser, drove by defendant's home and pointed it out and quoted him a price. The prospective purchaser immediately rejected any consideration of the property because the price was too high. Later an appointment was arranged during the primary term when the realtor's employee was to have shown the property to the prospect, but this appointment was cancelled. After the elapse of the primary term the prospective purchaser's wife learned of the availability of the house during a social visit in the home of the property owner. This visit had no relationship whatsoever to any of the realtor's activities. Thereafter the prospective purchaser and his wife purchased the property and the realtor sued for his commission. The court denied recovery on the theory that no causal connection existed between the activities of the realtor during the primary term and the subsequent acquisition of the property by the person to whom it had been pointed out by the realtor's employee. The court recognized the basic purpose of the extension clause and the fact that procuring cause was not essential to the activation thereof but held that in order for the realtor to recover under same, there had to be some connexity between the activities of the realtor and the ultimate sale. In discussing this, the court said:
". . . [R]eal estate brokerage is a highly competitive business and it is a logical conclusion that the provision was intended to protect the agent beyond the duration of the exclusive "agency or right" to sell the property in order that he might not be deprived of his compensation for finding and presenting a purchaser during that period should the owner sell to him. Without such protection, it would have been an easy matter for the owners to circumvent his right by postponing acceptance until the definite time had expired. . . ."'
"Implicit in this underlying purpose is the fact that there must be some minimal causal relationship between the activities of the broker during the listing period and the ultimate sale. Cf. Korstad v. Hoffman, 221 Cal.App.2d Supp. 805, 35 Cal.Rptr. 61 (1963). We find no case in this state where a broker has recovered a commission in the absence of such a relationship, and we do not believe that Clients' Service stands for such proposition. While Clients' Service held that the activities of the broker need not be the `procuring' cause of the sale, nevertheless, there was a clear connection between the activities of the broker and the ultimate sale.
"In the instant case, the court expressly found there was no connection between the activities of the plaintiff or Mrs. Ross and the ultimate sale. To hold that in these circumstances plaintiff was entitled to a commission would be contrary to the underlying purpose of the extension provision." Id. at page 636, 495 P.2d at page 351, 51 A.L.R.3d at page 1148.
The principles expressed in Hammerstad are sound, and although not previously clearly enunciated in Louisiana, are consistent with the results reached in several Louisiana cases dealing with extension clauses.
In Acadian Investment Company v. Laird, 138 So.2d 429 (La.App.3d Cir. 1962) a realtor sought to collect his fee on a sale which occurred following the expiration of the primary term of his contract for the reason that the extension clause of the listing contract contained the following language:
"* * * to anyone to whom this property has been exhibited, quoted or offered for sale . . . ." Id. at page 430.
There the realtor had contacted the subsequent purchasers during the primary term and advised them of his listing, indicating he would help in purchasing the property. The activity of the realtor, as reflected in the trial court's reasons for judgment was quoted with approval in the decision:
"Here the facts are entirely different. By his own testimony, Mr. LaBorde concedes that all he did was to call on Tanner and Cason, advise them that he had the Laird place for sale and offer to help *137 them in purchasing it. . . ." Id. at page 432.
The realtor made no further effort to effect the sale. The court, in denying plaintiff's recovery of the fee, approved and adopted the trial court's conclusions and reasonings:
"* * * Here again the plaintiff can fare no better. It seems sufficient to say that the reason behind the contract, and the law which supports it, requires that the quoting or offering of the property to be sold must be in the course of a genuine effort to effect a sale. The testimony is convincing that such was not the case. . . ." Id. at page 432.
In this case because there was only a minimum effort made by plaintiff to consummate a sale during his primary term with the parties who later purchased a portion of the property subject to plaintiff's listing, the court held the extension clause was inapplicable.
In Coppage v. Camelo, 330 So.2d 695 (La. App.4th Cir. 1976), a realtor sued for his commission on the extension clause in a listing contract. Following the expiration of the primary term, the property owner sold the lot subject to the listing contract, to an adjoining property owner who had attempted to purchase the property several times from the owner prior to his execution of the listing contract. During the primary term the realtor went to the adjacent property owner who conducted a nursery on the lot adjoining the one listed, and attempted to interest him in purchasing his property. The adjacent property owner immediately advised the realtor that he did not desire to talk to him, and that he would not buy the property through his offices. The nurseryman's response to the realtor's contact was as follows:
"* * * [Y]ou don't need to talk to me, about the land next door, I know all about it and I know who owns it and. . . I said, listen, let me tell you right now, there is no way I am going to buy it through a real estate [sic], I said, if I am going to buy it, you take your best shot and try to sell it, if I lose it it is okay." Id. p. 696.
The court stated that realtor's efforts to find a buyer did not produce the prospect who later purchased the property. The nurseryman promptly advised the realtor he was not interested in dealing with him. The nurseryman's position precluded the realtor from advising him of the price of the property. The court found the activities of the realtor during the primary term did not activate the extension clause because he did not produce the buyer and denied the realtor's right to recover his commission.
In construing the extension clause in the contract, we must consider the purpose of the clause and the intent of the parties at the time this contract was entered into.
In Cramer v. Guerico, 331 So.2d 550 (La. App., 1st Cir. 1976) wherein the court was interpreting the meaning of an extension clause, the court restates several precepts for the interpretation of agreements:
"When called upon to enforce or interpret a contract, the court must seek for and ascertain the mutual intention of the parties, if that be possible. . . ."
"It is the court's duty to construe agreements in accordance with the parties' common intention rather than adhere to the literal meaning of the terms thereof.. . ." Id. page 554.
Here, the purpose of the clause and the parties' intent was that Harkey would be entitled to his commission if, following the elapse of the primary term, a sale was made by Mrs. Gahagan to a prospect in whom Harkey, by his activities, had created some minimal interest which contributed to the eventual sale. The facts involved in this case simply do not fall within the foregoing principle.
Harkey's contact with Coleman during the primary term of his contract is comparable to the extent of the realtor's contact with the subsequent purchaser as found in Acadian Investment Company and Coppage, supra. Here, (a) Coleman was familiar with the property prior to the execution of the listing agreement and the telephone *138 call to him from Harkey; (b) Coleman had made an identical offer to purchase the property some time prior to the listing contract; (c) Coleman, upon receipt of the Harkey telephone call, quickly expressed no interest in the property; and (d) more than one year elapsed between Coleman's receipt of the telephone call from Harkey and his negotiations and purchase of the exact property at the exact price he had earlier offered to Mrs. Gahagan.
Our recent decision in Carter v. Hayes, 337 So.2d 295 (1976) is distinguishable from this case because there we found the actions of the agent resulted in the ultimate sale of the property.
There was no connexity nor minimal causal relationship between Coleman's purchase of the property from defendant and the activity of Harkey during the primary term of the listing contract.
The judgment of the trial court is affirmed at appellant's cost.