REDMANN, Chief Judge,
dissenting.
Thomas Cloke, himself a real estate broker, moved next door to Brandon Nodier, and, in Nodier’s words, “ever since he moved next door ... every time he seen my face” Cloke attempted to buy Nodier’s property, “way before” Nodier listed the property with plaintiff broker (who sues for a commission on Nodier’s sale to Cloke).
Nodier listed the property with plaintiff on March 29,1980 for three months or until June 29. On April 24, Cloke made' an offer on a “Thomas T. Cloke Inc.” form to buy the property. Listing agent Robyn Halvor-sen “believed” she spoke with Cloke only twice: once “when the offer came in and I think we had one subsequent to that” — presumably to tell Cloke that the offer was rejected April 30.
The listing agreement expired on June 29 without the property having been sold.
Eleven days later, on July 10, Nodier alone signed a form provided by plaintiff purporting to “extend your listing from _to 8/10/80 ....”
Forty-three days after the end of that period, on September 22, Nodier signed another of those forms to “extend your listing from _ to 10/22/80 ....” That document’s term also expired, on October 22, without a sale.
On December 3, Nodier sold the property to Cloke.
The agent sued Nodier for a commission, arguing that those two “extension” documents bound Nodier to pay plaintiff a commission, in the words of the original listing agreement, “on any sale of said property negotiated within three months after the expiration or termination of this contract to any party to whom said property was submitted by Agent ... during the period of this contract....”
It is theoretically difficult to conceive of “extending” a period that has already passed. See, in the different context of extension of appellate return day, Louisiana Power & L. Co. v. Lasseigne, 255 La. 579, 232 So.2d 278, 281 (1970): “That which no longer exists, that which has terminated, cannot be extended.” It may be theoretically more acceptable to consider those “extensions” as new listing contracts, embodying the terms of the original contract. (In that case, however, they would not support plaintiff’s claim for a commission on the Cloke purchase because, if the property was ever “submitted” to Cloke by the agent, it was not during either of the periods of those “extensions.”)
But, pretermitting that question, this writer would hold that the agent never “submitted” the property to Cloke and is therefore not entitled to recover as if on a sale to a “party to whom said property was submitted by Agent_”
The agent has, it must be conceded, a difficult job in phrasing its contract to afford reasonable protection in sales subsequent to expiration of a listing agreement to a buyer it has introduced to the property and interested in it, that is, in circumstances where the broker ought in fairness to be paid a commission. The doctrine of “procuring cause” helps the agent, but procuring cause is often hard to prove. Contractual provisions such as that at issue may solve the proof problem of procuring cause, but they bring their own problems. The bedrock issue in the interpretation of such clauses remains one of fairness.
An agent may be able fairly to argue that a person who learned of the property through the agent’s advertising, “open house,” or other effort is a person to whom the property was “submitted,” even if that person did not make an offer during the life of the listing contract. Yet the proof problems are grave, and the agent cannot be granted a commission on a post-listing agreement sale to a stranger on the basis that the agent “submitted” the property to the whole world by public newspaper advertising.
*860 One may suppose that the contract language was changed to “submitted” from “quoted” because of this court’s Coppage v. Camelo, 330 So.2d 695 (La.App. 4 Cir.1976), in which we concluded that late-sold property had not been “quoted” to an adjacent owner who, like ours, had often tried to buy the property long before the listing agreement. Although we said that “ ‘quoted’ means at least that the price be stated” to the prospect, id. at'696, one may also doubt whether the property there was “submitted” so as to justify a commission. The neighbor there testified he repelled the agents when they came to see him, telling them
“ ‘you don’t need to talk to me, about the land next door, I know all about it and I know who owns it and ... I said, listen, let me tell you right now there is no way I am going to buy it through a real estate [sic], I said, if I am going to buy it, you take your best shot and try to sell it, if I lose it it is okay.’ ” Id. at 696.
Our case is not that strong, but the basic similarity is that a next-door neighbor, who had long tried to buy the property, ultimately buys it after the expiration of a listing agreement but (plaintiff argues) within its post-listing period of limited entitlement to commission.
Also similar to our case is Harkey v. Gahagan, 338 So.2d 133 (La.App. 2 Cir.1976), where the late sale was to a person who had attempted to buy the property (with an adjacent house) prior to the listing agreement, and whom the agent had telephoned during the listing (because the owner told the agent of the prior offer), only to be told that person was not interested because the price was too high. Harkey contains extensive quotations from other Louisiana cases and from cases in other jurisdictions to support the analysis that clauses affording commission on a post-listing-agreement sale require “some minimal causal relationship,” id. at 136, and intend to apply to sales to a prospect in whom the agent, “by his activities, had created some minimal interest which contributed to the eventual sale,” id. at 137. (Harkey’s facts differ from ours in that the listing was of 11 acres, the sale of that plus 2 acres with a house, and for the same price the buyer had earlier offered.)
This writer would conclude that our agent did not “submit” the property to Cloke, either in the literal sense of introducing Cloke to it and offering it to Cloke, or in the analogous causal relationship sense of pursuing Cloke as a prospect already interested in it. The agent did nothing except transmit the offer that Cloke himself prepared. The agent made no further effort to effect the sale that might be considered as “submitting” the property to Cloke so as to oblige Nodier to pay a commission.
The judgment on the third-party demand of Nodier against Cloke and Cressy should be reversed because, notwithstanding that they are bound to indemnify Nodier, Nodier is not liable. Moreover, because they can only indemnify Nodier by either paying the judgment against him on the main demand or having it reversed, they are entitled to have the latter relief also, even though Nodier did not appeal; Robertson v. Perry, 370 So.2d 596 (La.App. 4 Cir.1979), appl. not considered, 372 So.2d 1048; see also Emmons v. Agricultural Ins. Co., 245 La. 411, 158 So.2d 594 (1963).