AUGUSTINE, Judge.
Appellee, Gertrude Gardner, Inc., (Gardner) sued appellant Earl Bryant, Sr. for a commission due to Gardner on the sale of a house to Mr. Bryant’s next door neighbors, Mr. and Mrs. Richard Evans. The trial court held that Gardner was entitled to a six percent commission. We affirm.
Earl Bryant entered into a listing agreement with Gardner for the sale of his house. That agreement was dated May 7, 1981. The pertinent language of that contract is as follows:
I/We agree to pay you ... a commission of 6 (six) percent on the gross amount of any agreement to sell ... that may be negotiated during the existence of this contract, ... or on the gross amount of any such agreement made within ninety days after the expiration or termination of this contract, with anyone to whom said property has been quoted, during the term of this contract ...
An extension of the listing agreement was signed on that agreements’ original expiration date, August 6, 1981, extending the term of the contract to November 7, 1981. Thus the 90 day post listing period would have expired on February 5, 1982.
Mary Edlebut, a Gardner real estate agent testified that a few weeks after the listing agreement extension was signed she held an “open house” to allow prospective purchasers to view the Bryant house. On the day of the open house Mrs. Edlebut saw the Evans’ son Rickey in the Evans’ yard. Rickey Evans was an acquaintance of Mrs. Edlebut’s. Mrs. Edlebut spoke briefly to Rickey Evans, who then introduced Mrs. Edlebut to his mother. Mrs. Edlebut asked Rickey and Mrs. Evans if they wanted to see the house. The Evans-es replied affirmatively and Mrs. Edlebut gave them a tour of the house. During the time that she was showing the house to the Evanses she told them the price. Sometime after showing the house to the Evans-es Mrs. Edlebut suggested to Mr. Bryant that the Evanses might be interested in purchasing the house. Mrs. Edlebut also gave Mrs. Evans some advertising materials concerning the house. Mrs. Evans testified that she subsequently showed those materials to her husband and discussed the purchase price with him. She also testified that she had known that the house was for sale prior to the tour conducted by Mrs. Edlebut but had never considered buying the house.
On December 1,1981 Mr. Bryant entered into a purchase Agreement with Mr. and Mrs. Evans for the sale of his house. Pursuant to that agreement the house was sold to Mr. and Mrs. Evans on December 7, 1981.
The trial court held that Mrs. Edlebut’s showing of the house coupled with the information Mrs. Evans received from Mrs. Edlebut entitled Gardner to the six percent commission required by contract and to reasonable attorney’s fees.
On appeal, Earl Bryant argues that Gardner is not entitled to the six percent commission because Mary Edlebut was not the procuring cause of the sale.[1] This argument must fail because it is not necessary that Mrs. Edlebut have been the procuring cause of the sale for Gardner to receive its commission.
In the leading case of Harkey v. Gahagan, 338 So.2d 133 (La.App. 2nd Cir.1976), there was a 12-month listing agreement with a 12 month extension clause. That extension clause was activated if the property was sold “to anyone with whom said agent or owner had negotiated or to whom this property had been shown or submitted prior to the termination ...” supra, at 135. In determining that the broker in Harkey was not entitled to a commission the court set forth the applicable law as follows:
The realtor does not have to be the procuring cause in order to activate the extension clause. He need not have been involved in active negotiation with the *453 purchaser at the time of the expiration of the primary term. However, his activities must have been the cause of creating some minimal interest in the purchaser which contributed to bringing about the eventual sale,
supra, at 135.
Commentators have read the Harkey case to “require the broker to prove two things in order to recover his commission under the extension clause: (1) that he carried on the kind of activity specified in the extension clause, and (2) that the activity created some minimal interest in the purchaser which contributed to the eventual sale.”[2]
In this ease the specified activity was to “quote” the property. In Ruiz v. Kiehm’s Pharmacy, 37 So.2d 720 (La.App.Orl.Cir.1948) the word quote, as used in this context, was defined. “To quote property surely means nothing more than to offer it and to state the price asked.” supra, at 725.
It is clear to us that Mrs. Edlebut’s conduct at the open house constituted a quotation of the property. Not only did Mrs. Edlebut tell the Evanses what the asking price of the house was, she also suggested to them that they might like to buy the house for use as rental property. See, Searcy v. Jacobs, 151 So.2d 166 (La.App. 4th Cir.1963).
Furthermore, it is apparent that Mrs. Edlebut’s efforts contributed to creating at least a minimal interest in the Evanses in buying the house. Mrs. Edlebut showed the house to the Evanses; she delivered a great deal of information to them and her actions apparently precipitated discussions between Mr. and Mrs. Evans in regard to purchasing the house prior to the termination of the listing agreement. Under these circumstances we believe that Gardner fulfilled the Harkey test and is thus entitled to its commission.
For the foregoing reasons the judgment of the trial court is affirmed.

. See, Comment, The Law of Real Estate Brokerage Contracts: The Broker's Commission, 41 La.L.Rev. 857, at 899 (1981).

. Hyde and Norwood, Extension Clauses in Louisiana Listing Agreements, 42 La.L.Rev. 1011, at 1025 (1982).