549 So.2d 1259 (1989)
TAMMARIELLO PROPERTIES, INC., Plaintiff-Appellee,
v.
MEDICAL REALTY COMPANY, INC., et al., Defendants-Appellants.
No. 88-489.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1989.
*1261 Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Greg Guidry, Lafayette, for defendants-appellants.
Juneau, Judice, Hill & Adley, Pat Juneau, Lafayette, for plaintiff-appellee.
Before STOKER, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
This was an action brought by a realtor against the owner of property to determine whether a realtor's commission was contractually due on a sale, and if so, whether the commission included an assessment of the value of a portion of the property which was donated. Both sides moved for summary judgment. A summary judgment was granted for the realtor, and the owner appealed. We affirm the judgment decreeing that a realtor's commission was due. We reverse the judgment for a commission on the donated part, and grant summary judgment in favor of the owner holding that a fee assessed against the donation is not recoverable.
Tammariello Properties, Inc. (Tammariello) is the realtor. Medical Realty Company, Inc. (Medical Realty) and later, after liquidation, its shareholders, were the owners of the Hamilton Medical Building in Lafayette, the property involved in the sale and donation.
On March 26, 1985, Medical Realty entered into a contract entitled "Exclusive Right to Sell Agreement" (listing agreement) with Tammariello, whereby Medical Realty agreed to pay Tammariello a commission on the gross sales price of the Hamilton Medical Building. Because Medical Realty had already approached Lafayette General Hospital about buying the property, that original listing agreement expressly excluded Lafayette General as a potential purchaser of the property for whom a commission would be due unto Tammariello.
On June 4, 1985, the original listing agreement was amended by a document entitled "Addendum to Listing Agreement for the Sale of the Hamilton Medical Building located at 1211 Coolidge Boulevard," which provided for Lafayette General Hospital to be a potential purchaser of the property for whom a commission would be due unto Tammariello.
The initial listing agreement provided for an expiration date of August 15, 1985. However, on August 9, 1985, Medical Realty extended that agreement with Tammariello pursuant to the same terms and conditions as set out in the original listing agreement as amended. This second agreement did not expire until February 15, 1986, and included no exclusions of potential purchasers.
On March 10, 1986, Tammariello caused to be delivered to Medical Realty, by certified mail, a letter enclosing a list of persons with whom it had conducted negotiations regarding the purchase of the property. Specifically listed therein were the names of J.J. Burdin and Tom Becnel, as members of the Board of Directors of Lafayette General Hospital.
On December 30, 1986, Medical Realty, pursuant to a voluntary liquidation, transferred to its shareholders the assets of the corporation, including undivided interests in the property which had been listed with Tammariello. Contemporaneously therewith, the shareholders, by combination sale and donation, transferred the property to Lafayette General Hospital in two transactions. The improvements on the property were sold for $1,800,000 in cash, and the land itself was donated. The total value of the property, improvements and land, was appraised at $2,242,000.
Based on undisputed facts both sides filed motions for summary judgment. The trial court granted Tammariello's motion, and awarded him a realtor's fee of $89,680, based on a commission of four percent assessed *1262 on the cash part of the sale and the appraised value of the donated land.
Medical Realty (now its shareholders) on this appeal attack this judgment primarily on the ground that no commission was due at all, and alternatively, that no commission was due on the donated part.

WHETHER A COMMISSION IS CONTRACTUALLY DUE?
First, appellants contend that the June 4, 1985, addendum to the original listing agreement did not remove Lafayette General Hospital from the previous exclusion list, but rather excluded only a member of the Lafayette General Hospital staff or organization.
The trial judge found that the aforementioned addendum expressly amended the original listing agreement to include Lafayette General Hospital as a potential purchaser.
We agree with the trial judge. The addendum provided:
... that should any staff or member of the Lafayette General Hospital be involved in the purchase of the building, that Tammariello Properties would be due a commission agreed to on the initial listing agreement.
The unrebutted facts establish that Burdin, President of Lafayette General Hospital, was involved in the eventual purchase of the property, thus the terms of the listing agreement and addendum thereto encompassed the sale between appellants and Lafayette General Hospital. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046; Kalmn, Inc. v. Walker Louisiana Properties, 488 So.2d 340 (La. App. 3d Cir.1986).
Next, the Medical Realty shareholders contend that the word "contact" as used in the listing agreement means initial contact or contact that is initiated by some minimal effort or activity of the broker.
The trial judge found that there was contact as contemplated by the extension clause in the listing agreement. We agree.
The pertinent provision of the extension clause provides as follows:
If, after the expiration of this agreement, owner sells the property to any person who had contacted owner directly....
The interpretation of a contract is the determination of the common intent of the parties. La.C.C. art. 2045. The words of this contract are clear and suggest that the parties intended any contact, whether initial or otherwise. La.C.C. art. 2046.
Medical Realty also argues that there was no contact between Lafayette General Hospital and Medical Realty between June 4, 1985, and February 15, 1986, the date of termination of the listing agreement, sufficient to activate the extension clause.
This argument has no merit. As explained in the trial judge's reasons for judgement, letters dated June 4, 1985, and July 24, 1985, between Burdin, Executive Vice-President of Lafayette General Hospital, and Dr. Edgar Breaux of Medical Realty, clearly indicate direct contact by Lafayette General Hospital with Medical Realty during the terms of the listing agreement and after the addendum of June 4, 1985. Furthermore, the letter dated July 31, 1985, from Burdin to Dr. Breaux and an affidavit of Burdin corroborate that such direct contact took place.
We are mindful of the circumstance that statements in Burdin's two affidavits, regarding whether negotiations were conducted between Lafayette General Hospital and Medical Realty during the term of the listing agreement, are in conflict. However, other unrebutted and uncontroverted evidence corroborate the statement in Burdin's first affidavit submitted by Tammariello in support of its motion for summary judgment, and directly refutes the statement in Burdin's second affidavit submitted by Medical Realty in opposition to Tammariello's motion for summary judgment.
We hold that the trial judge was correct in his finding that contact was made between Lafayette General Hospital *1263 and Medical Realty, appellant, during the term of the listing agreement. We likewise find that the trial judge was justified in concluding that there was no genuine issue of material fact regarding this statement. The trial judge undoubtedly concluded that the contradictory statement in the second affidavit was a simple mistake which could be disregarded. Since no credibility attack was mounted against Burdin, the only logical way to treat these conflicting statements, one contained in an affidavit for one side, and the other in an affidavit for the other side, was to say that one was correct and the other was in error.
The Medical Realty shareholders next argue that in its registration of prospects under the extension clause, Tammariello only reserved Burdin and Becnel as potential purchasers of the property and not Lafayette General Hospital. A similar contention has already been discussed, and rejected, earlier in this opinion.
Medical Realty's next argument is that the broker's efforts must create some minimal interest in the purchaser which contributes to the eventual sale in order for the broker to be entitled to a commission, citing, e.g., Harkey v. Gahagan, 338 So.2d 133 (La.App. 2d Cir.1976).
The trial judge in his reasons for judgment distinguished Harkey and similar cases from this case, stating "... the relevant portion of the instant extension clause requires no negotiations, only that there be contact by the eventual purchaser with the owner directly".
Where the language of a contract is clear and unambiguous, it must be interpreted solely by reference to the four corners of that document. Kemp v. Hudnall, 423 So.2d 1260 (La.App. 1st Cir.1982), writ denied, 428 So.2d 474 (La.1983); Wilson v. Cost + Plus of Vivian, Inc., 375 So.2d 683 (La.App. 2d Cir.1979). A basic rule of contract construction under Louisiana law is that a contract represents the law between the parties. Latter and Blum, Inc. v. Nodier, 442 So.2d 854 (La.App. 4th Cir.1983); Daigle v. Donald M. Clements Contractor, Inc., 533 So.2d 1064 (La.App. 4th Cir. 1988), writ denied, 536 So.2d 1216 (La. 1989).
We agree with the trial court and hold that the language of this contract is clear and unambiguous and does not mean that the parties intended to require Tammariello to create "minimal interest" in the buyer in order to be entitled to a commission. This is further indicated by the actions of the parties in first excluding, then including Lafayette General as a potential purchaser for whom a commission would be due to Tammariello. The original exclusion was a recognition that Medical Realty had already approached Lafayette General. By the subsequent addendum making a commission available for such a sale, the parties were recognizing that Tammariello might enjoy a commission without requiring the creation of minimal interest.
Next, Medical Realty contends that the extension clause in the listing agreement was not in effect at the time of the sale, since it did not contain an expiration date.
We disagree. We have seen that the parties, by first excluding and then including Lafayette General as a purchaser for whom a commission would be due, never intended that Tammariello would have to be the procuring cause of a sale to Lafayette General. That standard likewise was not required of Tammariello during the operative effect of the extension clause. The extension clause applied to the sale "to any person who had contacted owner directly or had been introduced to the Property by Broker ... during the time hereof or to any person with whom Broker ... has had negotiations for such sale", in which event the commission was due, provided only that Broker should have registered with owner in writing the name of such persons. This was done. Tammariello registered the name and reserved it for one year from March 7, 1986. The defendant received the registration and the one year name reservation without objection. The sale occurred on December 30, 1986.

WHETHER THE COMMISSION INCLUDES AN ASSESSMENT OF THE DONATION?
On December 30, 1986, the shareholders of the former Medical Realty Company, *1264 Inc., transferred the subject property, including land and improvements, to Lafayette General Hospital by a combination of sale and donation. The owners received $1,800,000 in cash for the sale of the improvements. They then donated the land to Lafayette General. The total appraised value of the improvements and the land was $2,242,000.
The trial court held that Tammariello was entitled to a commission on the value of the property donated as well as on the cash sale. The trial court reasoned that the relevant language of the real estate listing agreement is couched in terms of a sale, exchange or transfer and does not limit the payment of a commission to a percentage of the sales proceeds actually received in money. From this the court reasoned that the parties contemplated payment of a commission upon a transfer, whether the terms were a sale or a combination sale and donation.
The sellers argue that the language of the listing agreement in no way contemplated, or otherwise evidenced that the parties intended any commission would be paid on the basis of anything other than the final sale price. They contend that Tammariello is only due a commission from the $1,800,000 price paid.
Our analysis of the contract as a whole leads us to the conclusion that Tammariello was not due a commission on the value of the donation.
When interpreting a contract, the language of the document should be viewed as a whole with each word being given its general prevailing meaning, and each provision interpreted in light of the other so that each is given the meaning suggested by the contract as a whole. La. C.C. arts. 2046, 2047, & 2050; Lambert v. Maryland Casualty Co., 418 So.2d 553 (La. 1982). It is true that there is a provision in the listing agreement which reads as follows:
Said commission shall be earned and payable when owner sells, exchanges, or otherwise transfers the property during the term of this agreement at the above price & terms or at any other price & terms acceptable to the owner....
(Underscoring ours)
The words "otherwise transfers", can be taken to suggest that the parties contemplated a donation and that a commission would be due on such a donation. However, this construction fails to note or take into account the preceding provision in the listing agreement, which reads as follows:
In consideration for Broker obtaining a purchaser for the above described property at a price, terms and conditions acceptable to owner, owner agrees to pay Broker a commission of $ (see addendum) or % (of the final sales price) [emphasis ours]
Applying the principles of the above cited civil code articles, the terms of the commission provision as a whole suggest that the parties intended a commission would only be due out of any monies or other consideration given for the transfer of the property. This intention is suggested through use of the words "... a commission ... of the final sales price." These words suggest that the owner is obtaining a pecuniary advantage and that the commission will only be taken therefrom. The listing agreement cannot be read to mean that the commission would be calculated upon the appraised value of the property rather than the pecuniary advantage.
We hold that the trial court erred in awarding a commission on the assessed value of the donated portion of the transfer.
For the above and foregoing reasons the summary judgment in favor of Tammariello Properties, Inc., is amended to reduce the commission award to $72,000. In all other respects that summary judgment is affirmed. Summary judgment is rendered in favor of the shareholders of the former Medical Realty Company, Inc., and against Tammariello Properties, Inc., declaring that no commission is due on the value of the donation. Costs below and costs of this appeal will be borne three-fourths by the shareholders of the former Medical Realty Company, Inc., and one-fourth by Tammariello Properties, Inc.
*1265 SUMMARY JUDGMENT FOR TAMMARIELLO PROPERTIES, INC., AMENDED AND AFFIRMED; SUMMARY JUDGMENT FOR THE STOCKHOLDERS OF THE FORMER MEDICAL REALTY COMPANY, INC., GRANTED IN PART.