578 So.2d 541 (1991)
AMERICAN WASTE AND POLLUTION CONTROL COMPANY, Plaintiff-Appellant,
v.
JEFFERSON DAVIS PARISH SANITARY LANDFILL COMMISSION, Defendant-Appellee.
No. 89-1072.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1991.
Writ Denied June 14, 1991.
*542 Onebane, Donohoe (John G. Torian, II, Mack A. Ackal, John Keller), Lafayette, for plaintiff-appellant.
Millican, Miller, Andre Buisson, Jennings, for defendant-appellee.
Before DOMENGEAUX, C.J., and DOUCET and LABORDE, JJ.
LABORDE, Judge.
This is an appeal from a judgment vacating a temporary restraining order and denying a request for a preliminary injunction filed by plaintiff, American Waste and Pollution Control Company (American Waste) against defendant, Jefferson Davis Parish Sanitary Landfill Commission (Commission). We find no error in the judgment of the trial court. We affirm.

FACTS
The Commission was created on March 24, 1984, and is comprised of two representatives from the Jefferson Davis Parish Police Jury, two representatives from the City of Jennings and one representative each from the towns of Welsh and Lake Arthur. The Commission is vested with the power to construct and operate a sanitary landfill for Jefferson Davis Parish.
On June 4, 1986, the Commission received a permit issued by the State of Louisiana, Department of Environmental Quality (DEQ) to construct and operate a landfill facility on a 217 acre site northwest of the Town of Welsh. In the summer of 1987, the Commission solicited bids to lease the facility. American Waste was the only company to submit a bid. Browning-Ferris Industries (BFI) was also invited to submit a bid to lease the facility, but declined to do so for the stated reason that it was not willing to assume certain risks associated with the lease of the facility. The Commission approved American Waste's bid and submitted it to the member governmental bodies for their approval. The City of Jennings and the Town of Lake Arthur approved the proposed lease; however, the Town of Welsh rejected it. Since the Commission's charter required unanimous acceptance by every governmental body, the Jefferson Davis Parish Police Jury tabled the issue.
Not long after this issue was tabled, the Commission began discussing with American Waste the option of having American Waste operate and maintain the landfill as an employee of the Commission. These discussions resulted in the execution of an Operating and Maintenance Agreement (Long-term Agreement) on November 5, 1987, between the Commission and American Waste. It is important to note that this Long-term Agreement was executed over the objection of representatives from the Town of Welsh.
Although the Long-term Agreement was executed on November 5, 1987, American Waste's obligation to maintain and operate the landfill was not to begin until certain modifications to the permit had been approved by DEQ. These modifications included: (1) increasing the height of the landfill, (2) increasing the area utilized for the disposal of the waste of the landfill, and (3) allowing waste from outside the parish into the landfill. As the time delay for obtaining the permit modifications was far from certain, the Commission and American Waste entered into an Interim Agreement. The Interim Agreement provides, among other things, that prior to the permit modifications being approved by DEQ, American Waste is authorized to place, compact and cover solid waste received *543 at the facility and to operate the entry gate and scale. The Interim Agreement also provides that American Waste is to be compensated in an amount equal to the total of all user fees. Of paramount importance to this litigation is the clause appearing on the final page of the Interim Agreement which reads as follows:
"Either party to this agreement shall have the right to terminate this agreement upon giving fifteen (15) days written notice to the other party."
There are no conditions attached to this right to terminate the Interim Agreement.
In early 1988, the Town of Welsh filed suit against the Commission seeking to have both the Interim Agreement and the Long-term Agreement declared null and void. American Waste intervened in the suit, joining the Commission in defending the validity of both of the agreements. Shortly after suit was filed, the parties entered into settlement negotiations. In January of 1989, a proposed settlement agreement had been reached by the parties. Before the proposal was submitted to the Police Jury for its approval, however, BFI and Jefferson Davis Parish Solid Waste, Inc., submitted proposals to lease the landfill facility. With the submission of these other proposals, the Police Jury chose not to accept the proposed settlement agreement.
The record establishes that a private meeting was held at the offices of then Mayor Elect for the City of Jennings, Greg Marcantel, on April 18, 1989. Although the details of this meeting are sketchy, it is apparent that Mr. Marcantel expressed his concern that the landfill was becoming financially burdensome on the City of Jennings. Mr. Marcantel stated at trial that getting the Town of Welsh to agree to allow waste from outside the parish into the landfill was critical to the financial success of the operation. American Waste alleges that the Mayor of the Town of Welsh, Charles L. Bull, Jr., then struck a political deal with Mr. Marcantel offering to support the admission of outside waste into the landfill, only if American Waste was given its fifteen day notice of termination. On the evening of April 18th, the Welsh Town Council met. At the meeting, Council Member Carson Watkins made a motion to accept waste from outside the parish and for renegotiation of the Interim Agreement. The motion carried. The next night, April 19th, the Commission met. During the course of that meeting a motion to terminate the Interim Agreement was made by Welsh Commissioner, Robert Louviere. The motion was seconded and carried. Later that evening a motion was made to have Eugene Sellers, the Commission's engineer, prepare a proposal which would be made available to other prospective interim operators. This motion also passed.
After receiving the Commission's notice to terminate the Interim Agreement, American Waste filed for and was granted a temporary restraining order on May 1, 1989. The order prevented the Commission from permitting any other party from operating or maintaining the landfill; however, it did not prevent the Commission from receiving bids. The temporary restraining order was extended on May 11th and again on May 19th, and, by agreement by both Counsel, a Joint Motion to Continue Temporary Restraining Order, preserved the order until the hearing on the preliminary injunction. On May 30, 1989, judgment in the Town of Welsh's suit against the Commission was rendered declaring the Interim and Long-term Agreements between the Commission and American Waste to be null and void and of no effect. American Waste appealed from that decision on June 21, 1989. This court affirmed the trial court's ruling in that case in our docket number 89-913, reported at 576 So.2d 1112 (La.App. 3d Cir.1991) and rendered on March 13, 1991.
On June 30, 1989, the Commission met and requested that American Waste and BFI submit their final proposals. The Commission met again on July 7, 1989, and voted unanimously to accept the proposal presented by BFI.
A hearing on American Waste's motion for preliminary injunction was held on July 25 and 26, 1989. For reasons given in open *544 court, the trial judge found in favor of defendant and against plaintiff, dissolving the temporary restraining order and denying the preliminary injunction. Plaintiff now lodges this appeal.[1]

ABUSE OF RIGHTS
To obtain a preliminary injunction, the moving party must show that the injury, loss or damage he will suffer may be irreparable if the injunction does not issue, must show that he is entitled to relief sought, and must make a prima facie showing that he will prevail on the merits of the case. LSA-C.C.P. art. 3601; General Motors Acceptance Corp. v. Daniels, 377 So.2d 346 (La.1979). The trial court is vested with much discretion in determining whether to grant or refuse a preliminary injunction. Posey v. Smith, 453 So.2d 1016 (La.App. 3d Cir.1984).
American Waste contends that it will suffer irreparable harm if the Interim Agreement is cancelled and it is not permitted to operate and maintain the site as an interim operator. It bases its claim of irreparable injury on the supposition that if another interim operator is allowed to operate or maintain the landfill, American Waste, when it takes over as long-term operator, could be liable for the negligence or improper conduct of the interim operator. American Waste claims that one of its reasons for entering into the Long-term Agreement was that the landfill is a virgin site and that it would know its liabilities from the outset. Furthermore, its reason for entering into the Interim Agreement was to ensure that a third-party would not be allowed to operate the landfill prior to American Waste becoming the long-term operator.
We appreciate American Waste's concerns about becoming liable for the acts of a third-party interim operator; however, we can not see how it can be entitled to a preliminary injunction. The Interim Agreement contains a clause which allows either party to terminate the agreement with fifteen days notice. This right to terminate is not subject to any conditions, nor is it ambiguous in any way. We also note that American Waste drafted the Interim Agreement containing the right to terminate. A written contract between two parties is the law as to those parties and the courts are bound to enforce the contract as written. Stack v. DeSoto Properties, Inc., 221 La. 384, 59 So.2d 428 (La.1952); Tammariello Properties v. Medical Realty Company, Inc., 549 So.2d 1259 (La.App. 3d Cir.1989); Martin v. Lafayette Parish Police Jury, 308 So.2d 309 (La.App. 3d Cir.), writ denied, 310 So.2d 851 (La.1975). American Waste argues that it is entitled to a preliminary injunction on the ground that the termination of the Interim Agreement constitutes an abuse of rights. The doctrine of abuse of rights was expressly recognized by the Louisiana Supreme Court in Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353 (La.1977). In Illinois Central Gulf Railroad Co. v. International Harvester Co., 368 So.2d 1009, 1014 (La.1979) the Court engaged in a scholarly discussion of the abuse of rights doctrine, which we reproduce, in part, here:
"Nevertheless, the doctrine of abuse of rights has been invoked sparingly in Louisiana and we must look to other civilian jurisdictions for its full articulation. The doctrine is the product of a French jurisprudential and doctrinal movement which has expanded into most of the civil law jurisdictions `to the point of becoming a widely accepted principle of the Civil Law.' Cueto-Rua, Abuse of Rights, 35 La.L.Rev. 965, 967 (1975). See, generally, Catala and Weir, Delict and Torts: A Study in Parallel (Part II), 38 Tul.L. Rev. 221 (1964); Herman, Classical Social Theories and the Doctrine of Abuse of Right, 37 La.L.Rev. 747 (1977); Maynard, Abuse of Rights in France and Quebec, 34 La.L.Rev. 993 (1974); Comment, 7 Tul.L.Rev. 426 (1933). The main body of French case law on abuse of rights is based on article 1382 of the *545 French Civil Code, which is very similar in wording to article 2315 of the Louisiana Civil Code. In its origin, the abuse of rights doctrine was applied to prevent the holder of rights or powers from exercising those rights exclusively for the purpose of harming another, but today most courts in civil law jurisdictions will find an act abusive if the predominant motive for it was to cause harm. See, Cueto-Rua, supra, at 990-91; Catala and Weir, supra, at 222-26. The doctrine has been applied where an intent to harm was not proven, if it was shown that there was no serious and legitimate interest in the exercise of the right worthy of judicial protection. See, Cueto-Rua, supra, at 992-96; Catala and Weir, supra, at 230-34. Protection or enforcement of a right has been denied when the exercise of the right is against moral rules, good faith or elementary fairness. See, Cueto-Rua, supra, at 996-99. Another criteria, espoused originally by the French scholar Louis Josserand, would require an examination of the purpose for which the right was granted. If the holder of the right exercised the right for a purpose other than that for which the right was granted, then he may have abused the right. See, Cueto-Rua, supra, at 1000-1003; Catala and Weir, supra, at 227-29; Herman, supra, at 754-55."
Accordingly, the main criteria for applying the abuse of rights doctrine are:
(1) the exercising of rights exclusively for the purpose of harming another or if the predominant motive is to cause harm;
(2) the non-existence of a serious and legitimate interest that is worthy of judicial protection;
(3) the right has been used in violation of moral rules, good faith or elementary fairness; or
(4) the holder of the right exercised the right for a purpose other than that for which it was granted.
Massachusetts Mutual Life Insurance Co. v. Nails, 549 So.2d 826 (La.1989); Truschinger v. Pak, 513 So.2d 1151 (La.1987); Housing Authority of City of Abbeville v. Hebert, 387 So.2d 693 (La.App. 3d Cir.), writ denied, 394 So.2d 275 (La.1980).
American Waste alleges that the Commission's sole motive in terminating the agreement was to cause American Waste harm. It contends that the Town of Welsh wanted it out of the parish and it struck a deal with the other members of the Commission to effect this aim. American Waste further alleges that there was no serious or legitimate interest on the part of the Commission in exercising the right to terminate the Interim Agreement, but it was merely a malicious act born out of political deal-making.
After carefully reviewing the evidence, we are not persuaded that the Commission's predominant motive in terminating the Interim Agreement was to cause harm to American Waste. While there is some evidence which would indicate that representatives from the Town of Welsh were opposed to American Waste operating the landfill, there is no evidence which would support a finding that those representatives somehow coerced the Commission into terminating the agreement to cause American Waste harm. It is also apparent the Commission had several valid reasons for ending the agreement. These reasons include: (1) the breakdown in settlement negotiations; (2) the financially burdensome nature of the Interim Agreement; (3) the receipt of more favorable bids from other potential operators. In short, we find that the Commission had serious and legitimate business and financial reasons for terminating the agreement.
American Waste further alleges that the Commission abused its rights in terminating the Interim Agreement because it was the intent of the parties that the fifteen day notice termination clause would merely serve as a vehicle by which the parties could cancel the Interim Agreement when the preconditions for entering into the Long-term Agreement had been satisfied. American Waste made the following proffer of the testimony of its Regional Marketing Manager, Charles Lanphier:

*546 "BY MR. TORIAN:
* * * * * *
Q Okay. And in that regard, also, I'm going to hand you the interim contract and ask you, was it your interpretation of the interim contract that that fifteen day clause there could be arbitiarily used by either party for any reason?
A No.
MR. BUISSON:
Objection, your Honor, to the intention or motive or intent of the document which speaks for itself.
* * * * * *
THE COURT:
I would sustain the objection, Mr. Torian. I think the document, there is not ambiguity in the document and I rule that parol evidence is not admissible as to the purpose of that fifteen day clause.
* * * * * *
MR. TORIAN:
Okay. Short proffer. I think I've asked the question. I believe he has answered. Would youMr. Reporter, can you go back to find the question?
(Whereupon, the last question was read back by the Court Reporter)
BY MR. TORIAN:
Q Your Answer?
A No.
MR. TORIAN:
That's the end of the proffer, Your Honor."
Generally, when the provisions are clear and unambiguous, written contracts cannot be varied, explained or contradicted by parol evidence, and the meaning or intent of the parties must be sought within the four corners of the instrument. Guillory v. Calcasieu Parish Police Jury, 410 So.2d 1213 (La.App. 3d Cir.1982); Capizzo v. Traders and General Insurance Co., 191 So.2d 183 (La.App. 3d Cir.1966). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art 2046. The parol evidence rule was applied to the abuse of rights doctrine in the Massachusetts Mutual Life Insurance Co., supra, case. In the instant case, the termination clause is clear and unambiguous and there is no need to go outside the document to discover the parties' intent. The termination clause has no conditions attached to it, and there is no evidence that the Commission exercised its right to terminate the agreement for a purpose other than that for which the termination right was granted.
For the foregoing reasons, the judgment of the trial court is affirmed. Plaintiff, American Waste and Pollution Control Company, is cast for all costs.
AFFIRMED.
NOTES
[1] This court's decision in case no. 89-913 renders American Waste's request for a preliminary injunction moot. However, because that decision is not yet final, we will address the issues raised in this appeal.